[No. G035498. Fourth Dist., Div. Three. Nov. 21, 2005.]

In re DAVID M. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
DAVID M. et al., Defendants and Appellants.

Counsel

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant David M.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant Cheryl W.

Benjamin P. de Mayo, County Counsel, Beth L. Lewis and Saul Reyes, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

Opinion

FYBEL, J.—

### Introduction

The role of the juvenile court and the Orange County Social Services Agency (SSA) in dependency proceedings is twofold: to ensure the safety, protection, and well-being of children who are at risk of abuse, neglect, or exploitation, while preserving the family whenever possible. (Welf. & Inst.

Code, § 300.2) (All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.) The juvenile court was created both to protect children and to preserve and strengthen children's family ties. (*In re Sade C.* (1996) 13 Cal.4th 952, 959, fn. 1 [55 Cal.Rptr.2d 771, 920 P.2d 716].)

In this case, the juvenile court asserted jurisdiction over David M. and A.M. under section 300, subdivisions (b) and (j) in order to ensure their safety and well-being. We conclude, however, SSA failed to meet its burden of proof that there was a substantial risk of serious harm to David and A. at the time of the jurisdiction hearing. The juvenile court's findings that David and A. are within the court's jurisdiction are not supported by substantial evidence. We therefore reverse the court's jurisdiction order.

### SUMMARY OF PETITION AND EVIDENCE

David and A. were detained by SSA in December 2004, when David was two years old and A. was just two days old. SSA filed a dependency petition alleging failure to protect and abuse of sibling. (§ 300, subds. (b), (j).) As we shall explain, there is a great distance between what was alleged in the petition and the evidence adduced at the jurisdiction hearing. While the petition contains many serious allegations, SSA failed to meet its burden of proof on those allegations at the hearing.

In the petition, SSA alleged David and A.'s mother, Cheryl W. (mother), tested positive for marijuana metabolites at the time of A.'s birth; mother used marijuana during her pregnancy with A.; mother had an extensive, unresolved history of substance abuse; David and A.'s father, also named David M. (father), reasonably should have known of mother's substance abuse during her pregnancy and failed to protect A. from harm; mother had failed to obtain timely, appropriate, and consistent prenatal care; father reasonably should have known of mother's failure to receive prenatal care and failed to protect A.; mother had a history of mental illness, and suffered from a delusional disorder with somatic type, cannabis abuse, and a personality disorder, rendering her incapable of caring for David and A.;[1] father had a

---

[1] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) at page 329 provides the following diagnostic criteria for delusional disorders: "A. Nonbizarre delusions . . . of at least 1 month's duration. [¶] B. Criterion A for Schizophrenia has never been met. . . . [¶] C. Apart from the impact of the delusion(s) or its ramifications, functioning is not markedly impaired and behavior is not obviously odd or bizarre. [¶] D. If mood episodes have occurred concurrently with delusions, their total duration has been brief relative to the duration of the delusional periods. [¶] E. The disturbance is not due to the direct physiological effects of a substance . . . or a general medical condition." Somatic type delusions are "delusions that the person has some physical defect or general medical condition." (*Ibid.*) Cannabis abuse is a maladaptive pattern of the use

mental disability and had been diagnosed with anxiety disorder and depression, rendering him incapable of caring for the children; and David and A.'s half sibling, Aaron W. (mother's son), had been declared a dependent child of the juvenile court because mother had used marijuana during her pregnancy with Aaron, was incarcerated at the time of Aaron's birth, was unable to care for Aaron, and the whereabouts of Aaron's father were unknown.[2]

At a team decisionmaking meeting in December 2004, the following family strengths were identified: mother and father love their children; mother and father "provide a good home environment for their children"; mother and father "provide a clean home and a supportive family"; David's godparents are supportive and feel they can adequately provide care for the children; mother "is motivated to comply with services offered to her family"; and father "is willing to cooperate in any way to recover his children."

A contested jurisdiction and disposition hearing was conducted in April 2005. Mother testified she had used marijuana "off and on" between 1982 and 1984, but had never used it since then, and denied ever having used it while pregnant with A. Mother claimed her positive test for marijuana metabolites was due to being in the presence of others who were using marijuana. Mother had allowed one of her friends, who smoked marijuana, to babysit David on a few occasions.

Mother started receiving prenatal care in September 2004, when she learned she was pregnant with A. Mother claimed she tried to receive prenatal care starting in May 2004, but was told she was not pregnant. A. tested negative for all controlled substances, including marijuana, at the time of his birth. He was completely healthy at birth. A. did experience some muscle stiffness and tremors, although there was no evidence connecting those problems to mother's use of marijuana during her pregnancy.

In connection with Aaron's dependency proceeding, mother had been evaluated by a medical expert appointed under Evidence Code section 730, and diagnosed in August 2001 as being delusional, and as being impaired due to her long history of marijuana use. No current evaluation of mother's

---

of cannabis "leading to clinically significant impairment or distress," manifesting itself in a failure to fulfill major role obligations, use in physically hazardous situations, legal problems, or continued use despite persistent or recurrent social or interpersonal problems caused by the use of cannabis. (*Id.* at pp. 199, 236–237.) Cannabis abuse is distinguished from cannabis dependence by the lack of psychological or physical problems associated with cannabis in the context of compulsive use. (*Id.* at pp. 236–237.) The social worker in David's and A.'s cases reviewed the Diagnostic and Statistical Manual of Mental Disorders to determine the significance of mother's diagnosis.

[2] After the jurisdiction and disposition hearing, the juvenile court amended the petition; this summary of the allegations is based on the amended petition.

mental condition was conducted in connection with David's and A.'s dependency proceedings. Mother had never been hospitalized or involuntarily committed due to her mental disorders. The social worker testified the only evidence that mother was currently suffering from a psychiatric or psychological disorder was the 2001 diagnosis, coupled with the social worker's lack of any information that mother had sought treatment since her diagnosis: "I've uncovered no new information to . . . discern whether or not she would currently be diagnosed with the same illness."

Mother and father met in a sober living home. Mother believed father would be able to care for David and A. without her assistance. Although father was concerned about the dependency proceeding involving Aaron, he had no concerns about mother's ability to care for David and A. Father admitted suffering from social and anxiety disorder and depression, but denied being diagnosed a schizophrenic. Father did not believe his mental conditions or the effects of the medications he took to control them had any impact on his ability to care for David and A., although his anxiety disorder prevented him from maintaining employment. Father refused to sign medical releases to allow SSA to speak with his doctors. The social worker testified she was concerned about father's dependence on Social Security supplemental income because he is impaired and unable to work: "[I]f he's impaired in some areas, it might impair his ability to care for the children."

The social worker testified that she verified mother's positive marijuana test with the toxicologist, and that the quantity of marijuana metabolite indicated mother had used marijuana within approximately three weeks of the test date. The social worker never spoke to anyone who had seen mother use drugs during her pregnancy with A., or had seen her in possession of drugs or drug paraphernalia.

The social worker also testified that she had no evidence mother was unable to care for or protect David, and that because A. was taken from mother's custody immediately after birth, there was no ground for saying mother was unable to care for or protect him. Mother and father had obtained regular, appropriate medical care for David from the time of his birth until he was detained.

The juvenile court expressed "significant concerns in terms of mother's credibility, and I think that mother . . . has given false testimony on material points." After the hearing, the court amended the petition. The court then found the allegations of the amended petition were true by a preponderance

of the evidence. Based on its findings, the court determined David and A. were within the court's jurisdiction, pursuant to section 300, subdivisions (b) and (j): "The court would find that both the extensive history of substance abuse, the delusional nature of mother's mental condition, her selection of caretakers, the father's—court's finding as to the father's—court would find that there is a present substantial risk of harm to both David and [A.] if the mother and father were to provide care to these children." (We presume the court intended to refer to father's mental condition as a ground for concluding David and A. were within its jurisdiction.)

The court declared David and A. to be dependent children of the juvenile court. (§ 360, subd. (d).) The parties then stipulated to disposition. Mother and father separately appealed from the juvenile court's jurisdictional findings.

DISCUSSION

I.

*STANDARD OF REVIEW*

We review the juvenile court's jurisdictional findings for sufficiency of the evidence. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [60 Cal.Rptr.2d 315]; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649 [54 Cal.Rptr.2d 722].) We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 [32 Cal.Rptr.3d 526].) "However, substantial evidence is not synonymous with *any* evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations].' [Citation.] 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" (*Id.* at pp. 1393–1394.) In our review, we have taken into consideration the juvenile court's finding that mother "has given false testimony on material points," and therefore have discounted mother's testimony.

## II.

### *JURISDICTION BASED ON SECTION 300, SUBDIVISION (B)*

■ A juvenile court may determine a child is subject to the court's jurisdiction if it finds by a preponderance of the evidence that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness," as a result of a parent's failure or inability to adequately supervise or protect the child, a parent's failure to provide the child with adequate food, clothing, shelter, or medical treatment, or a parent's inability to care for the child due to the parents' mental illness, developmental disability, or substance abuse. (§ 300, subd. (b).)

■ "The statutory definition consists of three elements: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 [2 Cal.Rptr.2d 429].) The third element "effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]" (*In re Savannah M., supra,* 131 Cal.App.4th at p. 1396.) Section 300, "subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness.' [Citation.]" (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1137 [106 Cal.Rptr.2d 465].)

There are two overarching problems in this case. The first is that the evidence of mother's mental and substance abuse problems and father's mental problems was never tied to any actual harm to David or A., or to a substantial risk of serious harm. Mother's use of marijuana on at least one occasion while pregnant with A. and her failure to obtain prenatal care at an earlier date in her pregnancy were unquestionably neglectful acts, and we do not disagree with SSA's conclusion that mother's substance abuse problem in this respect remains unresolved. But A. tested negative for any drugs at birth, was healthy at birth, and showed no signs of withdrawal from any controlled substances. Assuming the truth of later reports that A. experienced tremors and muscle stiffness (and those reports were all from A.'s temporary caretaker or foster parent, not from any medical personnel), there was no evidence these symptoms were caused by mother's use of marijuana while pregnant or her failure to obtain consistent, timely prenatal care.

■ We also accept as true that mother continues to suffer from a substance abuse problem with marijuana in the limited respect shown on this appellate record, and that she and father both have mental health issues. But SSA offered no evidence that these problems caused, or created a substantial risk of causing, serious harm to David or A. "[SSA] has the burden of showing specifically how the minors have been or will be harmed and harm may not be presumed from the mere fact of mental illness of a parent. [Citations.]" (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318 [49 Cal.Rptr.2d 139]; see also *In re David D.* (1994) 28 Cal.App.4th 941, 953 [33 Cal.Rptr.2d 861].) This is precisely what SSA failed to do in this case. The record on appeal lacks any evidence of a specific, defined risk of harm to either David or A. resulting from mother's or father's mental illness, or mother's substance abuse. Certainly, it is possible to identify many possible harms that *could* come to pass. But without more evidence than was presented in this case, such harms are merely speculative. (See generally *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1346 [12 Cal.Rptr.3d 572] [evidence was insufficient to support finding that the mother's use of marijuana on one occasion created substantial risk of detriment to the children's physical or emotional well-being where there was no evidence of clinical substance abuse, no testimony from a medical professional, no testimony of a clinical evaluation, and no testimony linking the mother's marijuana and alcohol use to her parenting skills or judgment].)

The evidence was uncontradicted that David was healthy, well cared for, and loved, and that mother and father were raising him in a clean, tidy home. Whatever mother's and father's mental problems might be, there was no evidence those problems impacted their ability to provide a decent home for David. SSA does not disagree; David was born in June 2002, long after Aaron was declared a dependent of the juvenile court in January 2001. If SSA had any concerns about mother's and father's ability to care for David during his infancy, we have no doubt SSA would have initiated dependency proceedings for him long ago. Between the detention hearing and the jurisdiction hearing in this case (over four and one-half months), mother tested negative for drugs approximately 18 times. All of mother's missed tests were excused, and mother's positive tests for ethanol cannot support jurisdiction, since SSA did not allege mother's use of alcohol impairs her ability to care for David and A. (See *Jennifer A. v. Superior Court, supra,* 117 Cal.App.4th at p. 1344 [missed and positive drug tests could not justify termination of reunification services when drug use was not a ground for removing children from the mother's custody].)

The juvenile court did identify a valid concern regarding mother's selection of caretakers for David. Mother testified her friend Teresa babysat David three or four times while father was participating in a clinical study away from home. Mother knew that Teresa used marijuana, but Teresa was not under the influence of marijuana when she babysat David. Father testified he did not approve of using Teresa as a babysitter and she never babysat David again. SSA offered no evidence that David was endangered, much less harmed, while under Teresa's care, or that David was exposed to drugs, drug paraphernalia, or even secondhand marijuana smoke. The only testimony on the topic was that Teresa would not be babysitting David again, so there was not substantial evidence of any risk of future harm.

The second problem with this case is that SSA failed to investigate or report on a current basis. It appears from the record before us that SSA relied on the investigation it performed in 2000 and 2001, during Aaron's dependency proceedings, determined that mother was a lost cause, and simply gave up on her. The social worker admitted at the jurisdiction hearing she did not perform any independent investigation into mother's drug use history, but only reviewed the file in Aaron's dependency case. The social worker's information regarding mother's delusional disorder came from another social worker's summaries of the Evidence Code section 730 report, though the social worker in the current case did not read the section 730 report in its entirety. In the jurisdiction/disposition report, prepared less than a month after David and A. were taken into custody, SSA was already taking the position that "[a]ctions to free the children from [mother's] custody and control pursuant to Section 366.26 of the Welfare and Institutions Code . . . are appropriate at this time." SSA recommended denial of reunification services to mother based on section 361.5, subdivision (b)(10) and (11).

■ While past abuse or neglect can certainly be an indicator of future risk of harm, the record of past neglect in this case is not enough to declare a child a dependent of the juvenile court without something more current.[3] "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. [Citations.]" (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824.) "[P]revious acts of neglect,

_____

[3] We do not mean to imply that past abuse is never enough to establish a substantial risk of serious harm. (See, e.g., *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197 [101 Cal.Rptr.2d 760] [when sexually abused daughter was removed from the home, it was reasonable for the court to conclude the father might sexually abuse her sister, justifying jurisdiction over the sister under section 300, subdivision (j)].)

standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur. [Citations.]" (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565 [135 Cal.Rptr.2d 72].) SSA failed to meet its burden in this regard.

### III.

### *JURISDICTION BASED ON SECTION 300, SUBDIVISION (J)*

■  A juvenile court may also determine a child is within the court's jurisdiction if it finds by a preponderance of the evidence that the child's sibling has been abused or neglected and there is "a substantial risk that the child will be abused or neglected" in the same manner. (§ 300, subd. (j).) Regarding the section 300, subdivision (j) allegation, the sustained petition in Aaron's case was before the juvenile court. SSA did not offer in evidence any other portion of Aaron's case file, and did not ask the juvenile court to take judicial notice of Aaron's case file, other than the sustained petition. Although the jurisdiction/disposition report in David's and A.'s cases states that family reunification services were offered to mother in connection with Aaron's case, and that mother did not complete her reunification plan, no specifics are provided. What services were offered, and what were the circumstances of mother's apparent failure to fulfill her case plan and reunify with Aaron? We cannot tell from the record before us, and we do not see how the juvenile court could have done so, either. Under the circumstances of this case, allegations sustained more than four years before the current jurisdiction hearing, standing alone, are not substantial evidence sufficient to support the juvenile court's jurisdictional findings. (*In re Ricardo L., supra,* 109 Cal.App.4th at p. 569 [social services agency did not meet its burden of proving section 300, subdivision (j) allegation where court did not take judicial notice of documents from siblings' case files or state on the record it had considered them, where those documents were not attached to and incorporated in current reports, and where case plan for one of the other siblings was mentioned but not attached to current reports].)

■  Based on the appellate record, substantial evidence does not support the juvenile court's finding there was a substantial risk at the time of the jurisdiction hearing David and A. would be abused or neglected in the future as a result of their mother's and father's neglect or abuse.

## DISPOSITION

The jurisdiction order declaring David and A. dependents of the juvenile court is reversed. All subsequent orders are vacated as moot.

Sills, P. J., and Aronson, J., concurred.