Filed 10/2/13  In re Ki. S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Ki. S., et al., Persons Coming Under the Juvenile Court Law. | B247175 |
| | (Los Angeles County Super. Ct. No. CK93874) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| STEPHEN S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Terry T. Truong, Juvenile Court Referee.  Affirmed.

Eva E. Chick, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel for Plaintiff and Respondent.

Appellant Stephen S. (father) appeals from the juvenile court's orders establishing jurisdiction pursuant to Welfare and Institutions Code section 300, subdivision (j)[1] over his youngest daughter, Ki. (born September 2012), and removing Ki. from her parents' custody. Father further contends the juvenile court erred by declining to liberalize his visits with Ki.'s four older siblings, Kai (born June 2004), Ka. (born June 2005), Ke. (born November 2007), and Kal. (born August 2010), who were removed from the parents' custody in June 2012. We affirm the juvenile court's orders.

## BACKGROUND

### Detention and section 300 petition on behalf of older siblings

The Los Angeles County Department of Children and Family Services (the Department) received a referral on May 18, 2012, regarding six-year-old Ka., who was feverish and lethargic while at school. School officials had telephoned father, who said that he would be at the school momentarily. Several minutes later, father called back and said that the child's mother, Lisa G. (mother), would be going to the school instead and that she would be there shortly. Neither parent appeared at the school, and subsequent efforts to reach the parents by telephone were unsuccessful. School officials called 911, and Ka. was transported by ambulance to the Pomona Medical Center. The referring party reported that the parents had a history of neglect and that their children's attendance at school was poor. The referring party further stated that the parents were purported methamphetamine abusers.

An investigating social worker visited the family home on May 18, 2012, and noticed that the home was messy, with spills, toys, and clothing left on the floor. Mother said she had been at a doctor appointment when the school called about Ka. and she did not learn about the call until she returned home later that day. Father had been unable to reach her because he had misplaced his cell phone. Mother claimed it was her understanding, as well as father's, that Ka.'s grandmother was going to pick the child up because the parents had no transportation. Mother accused the school of overreacting and

---

[1] All further statutory references are to the Welfare and Institutions Code, unless stated otherwise.

2

constantly calling in referrals. The social worker asked about drug use, and mother said she and father had drug tested in the past as a condition to receiving services. When the social worker then asked the parents if they would submit to an on demand drug test, mother replied that she was pregnant and that her pregnancy should be a sufficient indication that she did not use drugs. Both parents refused to drug test.

Father told the social worker that when the school telephoned him about Ka. he had called the maternal grandmother. He had then called the school back to inform them that the grandmother was on her way but that it would take her at least an hour to get to the school. When the social worker asked why father had not answered the school's subsequent telephone calls, father claimed the phone's battery had run out and that he had subsequently misplaced the phone.

The Department received notice of another referral on May 22, 2012, alleging general neglect and sexual and emotional abuse of the children. An emergency response child protection worker, accompanied by a Claremont police officer, had responded to the family home on the evening of May 21, 2012, but found no immediate evidence of child abuse.

On May 22, 2012, a responding social worker interviewed Ka. at her school. The child said everything was fine at home but admitted she was not supposed to talk about it. Kai was not in school and was reportedly at home with a fever. The social worker visited the family home later that day and observed Kai outside the home on the driveway. According to mother, Kai was not at school because he had a field trip that day but had stayed home because he was sick. The social worker asked mother if she and father would agree to drug test that day, and mother agreed. Mother acknowledged that she understood that a missed test would be considered a "dirty" test.

Later that same day, the social worker spoke by telephone with the paternal grandmother, who asked that her statements remain anonymous because father had threatened her with violence in the past when she had criticized his parenting. The paternal grandmother said that both father and mother abused alcohol and drugs and that methamphetamine was their drug of choice. She expressed concern for the children

3

because the parents allowed various people into the home and then passed out or fell asleep, leaving the children unattended. She said she had observed Ka. exhibit sexualized behavior. The paternal grandmother accused father of selling the family's food stamps for money. She said she and her husband visit the family on a weekly basis to ensure that the children are safe and that there is food in the home for them.

The social worker also spoke with a paternal aunt, who said she was afraid to make a statement about the family because father had threatened her in the past. The paternal aunt said she and mother drank regularly and heavily together and that mother and father regularly used methamphetamine, although they never did so in the presence of the children.

On May 23, 2012, the social worker received a message from mother that she and father had failed to drug test the previous day because they did not have transportation. Mother further stated the parents did not understand why they had been asked to drug test.

The social worker spoke with the maternal grandmother on May 29, 2012. The maternal grandmother reported domestic violence between the parents and said that she had observed father and mother screaming at each other in the presence of the children. She expressed the belief that father was a methamphetamine abuser. When asked about Ka.'s illness at the school on May 17, 2012, maternal grandmother said the school had called her but she had told the school it would take at least an hour to get there. She said she thereafter attempted to contact father and mother but was unable to reach them.

On June 5, 2012, paternal grandmother called the social worker to report that father had been shot in the face at the family home while the children were present. Ke. had reportedly witnessed the incident. Father asked paternal grandmother to take the children out of the family home because he was afraid the people who had shot him might return. The Claremont Police Department confirmed that a shooting had occurred in the parents' home while the children were present.

After the shooting, the Department conducted further interviews with relatives. The maternal grandmother's husband, Nelson J., said that father had left the hospital

4

against his doctor's advice and had arrived with mother at the location where maternal grandmother and the children were staying. Father had attempted to strike maternal grandmother in the presence of the children, but Nelson had intervened.

Paternal uncle Danny S. said father had been abusing drugs since junior high school and that his drugs of choice were methamphetamine and marijuana. The paternal grandmother said she was afraid of father and that she believed father would attempt to burn down her home if she agreed to take the children.

On June 11, 2012, the Department filed a petition under section 300 subdivisions (b) and (j) on behalf of Kai, Ka., Ke., and Kal., alleging that the children were at risk of harm as the result of the parents' drug use and failure to obtain timely medical attention for Ka. At the detention hearing, the juvenile court found a prima facie case for detaining the children and ordered them detained with the paternal grandfather, who lived in northern California. Both parents were accorded monitored visits and family reunification services and were ordered to participate in random and on demand testing for drugs and alcohol.

**Jurisdiction/disposition of section 300 petition on behalf of siblings**

In its jurisdiction/disposition report dated July 25, 2012, the Department reported that its efforts to interview the parents had been unsuccessful. Both parents failed to appear at their scheduled appointments with the dependency investigator, and neither called to reschedule. Father failed to appear for scheduled drug and alcohol testing on June 14 and 21 and July 3, 2012. Mother tested negative for drugs and alcohol on July 10, 2012, but failed to appear for scheduled testing on June 14 and 18, 2012.

The Department's jurisdiction/disposition report included a copy of the Claremont Police Department's report of the June 5, 2012 shooting at the family home. Father told the police that five men had approached him while he was out walking and that one of them had shot him. Police found blood on the pathway leading to the front door of the home and a large quantity of blood that had been partially cleaned up in the front entryway inside the home. An adult witness who had been staying in the home said he saw five men approach father and that one of them had a gun. He further stated it was

"obvious" that father knew the men. The men and father walked toward the garage, and the witness later heard father screaming and the sound of a gunshot from inside the garage.

At the July 25, 2012 adjudication hearing, the juvenile court admitted into evidence, at father's request, a letter from the Community Health Care Clinic indicating father had been attending outpatient narcotics prevention treatment since June 12, 2012, and had submitted to 11 random drug tests. The court admitted a similar letter regarding mother. Father testified he had been drug testing twice a week and that all of his tests results were negative. He said he had never seen mother use drugs. Father claimed the men who came to his home and shot him were friends of the paternal aunt and he did not know them. He admitted that he had previously been found in contempt of court for violating a criminal restraining order following an altercation with mother.

The juvenile court sustained an amended petition, finding that both father and mother had unresolved histories of substance abuse that endangered the children's safety. The court further found that father was not a credible witness and that both parents had been uncooperative and evasive with regard to drug testing. The juvenile court ordered the children removed from their parents' custody and ordered family reunification services for father and mother, including a drug rehabilitation program with random and on demand weekly testing through the Department. The court stated that the parents could drug test through their treatment program if the program's testing protocol was acceptable to the Department.

**Detention and section 300 petition on behalf of Ki.**

On October 2, 2012, the Department received a referral on behalf of Ki., who was born in early September 2012. That same day, the Department's social worker responded to the family home and spoke to father and mother, who were upset and initially uncooperative. The parents informed the social worker they were renting two of the three bedrooms in the home. When the social worker asked whether the tenants had undergone criminal background checks, father objected and said it was not necessary for the tenants to be "criminally cleared." Father refused to disclose the tenants' names but told the

social worker "they are moving out any way." The social worker returned to the home on October 5, 2012, and was met by a woman who claimed to be house-sitting for the parents, who were not at home.

On October 8, 2012, the social worker spoke with the paternal grandfather and his wife, with whom the four older children were placed. They reported the parents had traveled to northern California for a two-day visit with the children, but father had not visited with the children at all on the first day because he slept most of the day. On the second day, father left the visit twice and was absent for three and a half hours. Father reportedly showed no joy or affection toward any of the children throughout the two-day visit.

On October 12, 2012, the social worker asked father and mother to submit to a drug test, but neither parent appeared for testing. On October 13, 2012, the Department, assisted by the Claremont Police Department, detained Ki. from the parents. While Ki. was being detained, a police officer identified an adult male in the family home who was on parole for drug possession. Father drove by the home during Ki.'s detention, and continued driving past the home when he saw law enforcement officers were present.

On October 17, 2012, the Department filed a petition under section 300 subdivisions (b) and (j) on behalf of Ki., alleging that the child was at risk because of the parents' unresolved substance abuse problems. At the detention hearing, the juvenile court found a prima facie case for detaining Ki. from the parents' custody and ordered her detained with a maternal aunt. The court accorded both parents monitored visits and ordered them to participate in random and on demand drug testing.

**Jurisdiction hearing on behalf of Ki. and progress hearing for siblings**

At the time of the Department's December 4, 2012 jurisdiction/disposition report, Ki. remained placed with a maternal aunt. Both parents were enrolled in an outpatient drug treatment program and drug tested regularly through the program. All of their test results had been negative. Father and mother had also completed a parenting education course and were participating in individual, group, and substance abuse counseling.

The Department reported as of October 17, 2012, it had directed the parents to submit to random drug testing through Pacific Toxicology, in addition to testing through their drug treatment program. Mother tested negative on October 19 and November 2, 2012, but failed to appear for testing on October 22, 2012. Father failed to appear for testing on October 2, 15, and November 1, 2012.

The parents had regular contact with the four older children by telephone or by Skype, although most of the contacts were initiated by the children's caregivers. Mother had traveled to northern California twice to visit the children, and father went once. The paternal grandfather also brought the children to visit the parents and other Los Angeles based relatives on two occasions.

The older children were thriving in the paternal grandfather's home and expressed the desire to be with their parents "only if" the parents had changed. The children admitted they were often frightened while living with their parents.

At a December 4, 2012 hearing, the juvenile court addressed the possibility of liberalizing the parents' visits with Kai, Kalani, Kal., and Ka. The children's counsel asked that liberalizing the visits be deferred until after the parents had submitted to more testing with Pacific Toxicology. The juvenile court declined to liberalize father's visits, but accorded the Department continuing discretion to do so in the future. The court also made clear that both parents were required to test at Pacific Toxicology on a weekly basis: "I want both parents testing for Pacific Toxicology. Let me make myself very, very clear: Pacific Toxicology on a weekly basis. Unless you have a legitimate reason why you missed, you need to be testing for me."

The juvenile court then proceeded to adjudicate the section 300 petition filed on behalf of Ki. After admitting into evidence various reports prepared by the Department and hearing argument from the parties, the court sustained the allegations under section 300, subdivision (j) that both parents had unresolved histories of substance abuse and that Ki.'s older siblings were current dependents of the juvenile court because of the parents' substance abuse. The court dismissed the allegations under subdivision (b). The court continued the dispositional hearing for Ki. to the same date as the six-month review

8

hearing for the four older siblings and ordered the Department to prepare a supplemental report addressing the results of the parents' drug tests.

**Six-month review as to siblings and disposition as to Ki.**

In mid-January 2013, father and mother completed a six-month narcotic prevention and substance abuse program. Mother had submitted to a drug test at the Department's direction on December 17, 2012, but had failed to appear for testing on December 11 and 28, 2012, and January 9, 2013. Father failed to appear for any random drug test directed by the Department.

The four older children continued to live with their paternal grandfather in northern California and were thriving physically, emotionally, and socially. Ke. and Ka. were acting out sexually, however, and the paternal grandfather was arranging for counseling. The parents had a four-hour visit with the older children on December 21, 2012, which went well. They had visited with Ki. three times during the previous eight weeks.

The juvenile court held a contested dispositional hearing as to Ki. and a six-month review hearing for Kai, Ka., Ke., and Kal. on January 24, 2012. At the hearing, father requested unmonitored visits with the older children. The children's attorney opposed liberalizing the visits, noting that the parents had failed to drug test regularly through Pacific Toxicology. Father argued he had tested on December 6 and 14, 2012, and that he had appeared for testing two other times but testing had not occurred because the monitor had acted inappropriately toward him. The juvenile court ordered continued family reunification services for both parents but declined to liberalize their visits. The court noted that father and mother had been present at the December 4, 2012 hearing at which time they had been instructed to test weekly at Pacific Toxicology, which both had failed to do.

The juvenile court then proceeded to the contested disposition hearing for Ki., declared her a dependent of the court and ordered her removed from the parents' custody. Both parents were accorded family reunification services, including weekly drug testing and aftercare, and monitored visits with Ki.

This appeal followed.

## DISCUSSION

### I. Standard of review

We review the juvenile's court's jurisdictional and dispositional findings under the substantial evidence standard. (*In re David M.* (2005) 134 Cal.App.4th 822, 829; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762.) Under this standard, we review the record to determine whether there is any reasonable, credible, and solid evidence to support the juvenile court's conclusions, resolve all conflicts in the evidence, and make all reasonable inferences from the evidence in support of the court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)

We review the order setting visitation terms for abuse of discretion. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1704.) An abuse of discretion does not occur unless the juvenile court has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination. (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.)

### II. Jurisdictional findings

Section 300, subdivision (j) accords the juvenile court jurisdiction over a child when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j).)

Father argues that the juvenile court's assumption of jurisdiction over Ki. was improper because there was no sustained allegation under section 300, subdivisions (a), (b), (d), (e), or (i) after the juvenile court dismissed the subdivision (b) counts in the petition filed on behalf of Ki. Father's argument is premised on an incorrect interpretation of the statute. Section 300, subdivision (j) requires, as a predicate, a sustained count under subdivisions (a), (b), (d), (e), or (i) pertaining to the child's sibling, not to the subject child. That statutory predicate was met in the instant case. At the time of the December 4, 2012 jurisdictional hearing, the juvenile court had already found that

10

father's and mother's substance abuse placed Ki.'s older siblings at risk of harm under section 300, subdivision (b).

The second predicate for jurisdiction under section 300, subdivision (j) -- a substantial risk that the child will be abused or neglected -- was also met. The statute "'does not require that the child actually be abused or neglected before the juvenile court can assume jurisdiction.' [Citation.] Instead, there need only be a "'substantial risk'" of abuse or neglect. [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 134.) There is substantial evidence that the parent's unresolved histories of substance abuse put Ki. at substantial risk of harm. Both parents repeatedly failed to appear for random drug testing directed by the Department. Father failed to appear for drug testing on October 2 and 15, 2012, November 1, 26 and 28, 2012, December 6, 14, 17, 20 and 28, 2012, and January 4, 2013. Mother failed to appear for testing on October 10 and 22, 2012, November 15 and 26, 2012, December 7, 11, and 28, 2012, and January 9, 2013.

The parents' lifestyle was also a basis for concern. Family members had expressed concern for Ki.'s siblings because father and mother allowed other people into the home and then left the children unattended. Mother and father continued this pattern after Ki. was born. The parents admitted they were renting two of the three bedrooms in their home to different people. None of the tenants had undergone criminal background checks. At the time Ki. was detained, a Claremont police officer found in the family home an adult male who was on parole for drug possession.

Substantial evidence supports the juvenile court's jurisdictional findings.

## III. Dispositional order

Section 361, subdivision (c)(1) provides that the juvenile court may remove a child from the physical custody of his or her parent when the court finds, by clear and convincing evidence, that there is a substantial danger to the physical health, safety, protection or emotional well being of the child and there are no reasonable means to protect the child without removal from the parent's physical custody.

The parents' disregard of the juvenile court's order to submit to random drug testing as directed by the Department supports the dispositional findings and order. At

11

the December 4, 2012 jurisdictional hearing, the juvenile court made "very, very clear" to father and mother that they were to drug test through Pacific Toxicology on a weekly basis, yet both parents failed to do so.  Father failed to appear for drug testing on December 6, 14, 17, 20, and 28, 2012, and on January 4, 2013.  Mother failed to appear for scheduled testing on December 11, and 28, 2012, and on January 9, 2013.  The parent's drug abuse is substantial evidence which supports the juvenile court's dispositional findings and order.

## IV.  Visitation with siblings

Father's challenge to the juvenile court's rejection of his request to liberalize visits with Kai, Ka., Ke., and Kal. at the six-month review hearing held on January 24, 2012, was rendered moot by his subsequent stipulation, through counsel, to a "stay away order" prohibiting him from going to the paternal grandparents' home, the children's school, and the grandparents' place of employment, but allowing him monitored visitation.  We therefore need not address the visitation issue.

**DISPOSITION**

The juvenile court's jurisdictional and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS


_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


12
