Filed 3/11/15  In re Emanuel S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re EMANUEL S. et al., Persons Coming Under the Juvenile Court Law. | |
| | D066754 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. Nos. J513725 & EJ2158D-E) |
| v. | |
| F.H., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

F.H. appeals the judgment entered following the jurisdiction and disposition hearing in the juvenile dependency case of his minor children, Emanuel S., S.H., and N.H. He contends the evidence was insufficient to support the juvenile court's jurisdictional finding under Welfare and Institutions Code section 300, subdivision (b).[1] We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2014, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b) on behalf of 13-year-old Emanuel, 12-year-old S.H., and 10-year-old N.H. The minors lived with F.H. and his wife April H.[2] As later amended, the petitions alleged that F.H. used alcohol to excess, which resulted in aggressive behavior towards the minors and April. Despite seven months of voluntary services, F.H. did not make substantial progress and continued to drink alcohol. The petitions also alleged that F.H. caused three fires at the family home and failed to notice signs and symptoms of diabetes in S.H. The Agency concluded that Emanuel, S.H., and N.H. had suffered or were at substantial risk of suffering serious physical harm or illness as a result of F.H.'s failure or inability to supervise and protect them.

---

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    April is not the biological mother of the minors. Emanuel's biological mother is Holly S. At the time of the petitions, F.H. had legal custody of Emanuel, and Holly had visitation rights. S.H. and N.H.'s biological mother is Lourdes H. April, Holly, and Lourdes are not parties to this appeal, and we will discuss them only where necessary.

The Agency had a long history of involvement with the family, including 53 referrals for child abuse or neglect. When F.H. drinks alcohol, he becomes aggressive, yells, and bothers the children. Prior to the most recent voluntary services period, F.H. drove with the minors while under the influence of alcohol and, while at a liquor store, he began to fight with a stranger. N.H. was injured when she tried to stop the fighting. After that incident, F.H. was offered parenting classes and substance abuse treatment, among other voluntary services. Although he completed a parenting class, he did not make substantial progress in his substance abuse program. F.H. attended several Alcoholics Anonymous meetings, and obtained a sponsor, but he did not progress beyond that step. F.H. was eventually terminated from his treatment program for noncompliance.

During the voluntary services period, the Agency received a referral alleging an altercation between F.H., his wife April, and N.H. F.H. became angry with N.H. and grabbed N.H.'s arm. April tried to protect N.H. and successfully kept F.H. away from her. N.H. was crying and shaking. The entire incident lasted several hours because F.H. continued to try to pull N.H. away from April. The Agency determined that the allegations were inconclusive for emotional abuse.

F.H. continued to use alcohol, albeit less than before. The minors reported fewer fights and other disturbances in the house. However, three fires occurred under suspicious circumstances. The first fire occurred outside of the family home, on a nearby fence where F.H. disposed of cigarette butts. Emanuel observed the fire from a kitchen window. N.H. reported it was a "big fire" with "lots of smoke everywhere." Emanuel called F.H., who put out the fire. An Agency social worker later investigated the site of

3

the fire and found a box full of plastic, trash, and cigarette butts. The second fire occurred the next day, this time inside the kitchen. The fire started in a trash bin, and smoke spread throughout the house. The fire burned a small portion of the wooden kitchen floor. In conversations with the Agency, April said she believed both fires had been caused by F.H. throwing out cigarette butts that he had not completely extinguished.

The third fire was discovered when a family friend dropped the minors off at home after activities at the Boys & Girls Club. (April tried to contact F.H. to retrieve the minors, but she could not reach him.) The family friend saw smoke coming from the house and went inside. He noticed flames coming from a pan on the stove that had been left unattended. F.H. was asleep. When the family friend tried to wake F.H., he was not responsive. Based on F.H.'s behavior, the family friend believed that F.H. was drunk.

Several days later, F.H. drank approximately five 24-ounce beers in an afternoon. F.H. yelled and acted aggressively towards April and the minors. F.H. and April argued. April believed the minors were afraid. When F.H. stepped outside to smoke, April locked him out of the house. The police arrived soon afterwards. The police interviewed the family but did not make any arrests. After the police left, F.H. took the family's electronic devices and made everyone sit in silence. F.H. admitted he had been drinking that day and was frustrated. However, he said he would not have done anything differently.

The Agency contacted the family and negotiated one-day and one-week safety plans requiring F.H. to abstain from alcohol, among other provisions. Afterwards, F.H. said he would not sign any more safety plans. Just before the one-week safety plan

4

expired, the Agency detained the minors. The Agency believed that F.H. did not understand the impact his alcohol abuse had on his family or his ability to care for the minors. At the detention hearing, the court found that the Agency had made a prima facie showing under section 300, subdivision (b).

Several days after his detention, S.H. was admitted to Rady Children's Hospital. S.H. had significantly elevated blood sugar levels and was diagnosed with type 1 diabetes. A doctor explained that "the magnitude in elevation of [S.H.]'s value indicates he was hyperglycemic [for] at least [three]-[four] weeks before hospitalization." Similarly, a nurse told the Agency that "[S.H.] had to have been showing symptoms for a long time and that because his sister [N.H.] has diabetes the parents should have been aware of those signs."

F.H. and April went to the hospital to see S.H. While there, they caused a "commotion" and "a big disturbance" by yelling and screaming. Hospital staff called the police, who spoke to F.H. After at least three days in the hospital, S.H. was released.

In a separate incident, F.H. was arrested at home following a heated argument with a contractor working on a house on the same lot where F.H. lived. F.H. locked the gate to the property, trapping the contractor. The contractor told police he had no way of leaving and felt scared to leave the house. The contractor said F.H. was holding an empty beer bottle. The contractor called a coworker who, despite F.H.'s interference, was able to unlock the gate and free the contractor. The police arrived and arrested F.H. on charges of false imprisonment. A subsequent criminal records check described the charge as false imprisonment with violence.

5

Prior to the jurisdiction and disposition hearing, the Agency recommended that the court sustain the petitions. As to Emanuel, the Agency recommended that he remain in the custody of his mother Holly and that jurisdiction be terminated. As to S.H. and N.H., the Agency recommended that they remain in out-of-home care and that F.H. receive reunification services.

At the hearing, the court received several Agency reports into evidence and heard testimony from an Agency social worker. The court also heard testimony from F.H. and April. The court sustained the allegations of the petitions, as amended, and removed the minors from F.H.'s custody. The court ordered that Emanuel be placed with Holly and terminated jurisdiction as to him. The court ordered that S.H. and N.H. remain in foster care and ordered that family reunification services be provided. F.H. appeals.

## DISCUSSION

F.H. contends the evidence does not support the court's jurisdictional finding under section 300, subdivision (b). Section 300 provides, in relevant part, as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b)(1) The child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

6

" 'The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm.' " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) " 'Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness.' " (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1137.) The juvenile court must find that the child is a person described in section 300 by a preponderance of the evidence. (§ 355, subd. (a).)

"Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

" 'On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.]' [Citation.] [¶] Thus, 'we must uphold the court's [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.] Substantial evidence is evidence that is reasonable, credible, and of solid value. [Citation.]' " (*In re J.N., supra*, 181 Cal.App.4th at p. 1022.)

We conclude the evidence supports the juvenile court's finding that the minors were at substantial risk of serious physical harm at the time of the hearing. F.H. has a longstanding problem with alcohol abuse. When F.H. abuses alcohol, he becomes at

7

times aggressive, violent, and neglectful of the minors. Past incidents related to alcohol abuse include driving with the minors while intoxicated, engaging in a physical altercation with a stranger while the children were present (resulting in injury to N.H.), causing at least one fire at the family home by falling asleep while cooking food, yelling at April and the minors until confronted by police, and harassing and falsely imprisoning a contractor working on a nearby house.

F.H. was also neglectful in other ways, including by disposing of his cigarette butts in ways that caused two fires, failing to notice the signs and symptoms of diabetes in S.H, and harassing N.H. to the point of April needing to protect her. While there was no direct evidence that alcohol consumption led to these incidents, F.H.'s continued abuse of alcohol could only exacerbate these neglectful tendencies.

Although the Agency provided F.H. with voluntary services designed to address his alcohol abuse, F.H. did not make substantial progress and was terminated from his treatment program. F.H. also refused to sign a safety plan longer than a week in length that would have prohibited him from drinking alcohol. At the time of the hearing, therefore, F.H.'s alcohol abuse problem remained untreated. Given the evidence of F.H.'s previous actions while abusing alcohol, and the substantial likelihood that F.H. would continue to abuse alcohol, the court could reasonably find that the minors were at substantial risk of serious physical harm in F.H.'s care.

F.H. points out that his alcohol problem appears to have improved somewhat during the voluntary services period. April and the minors reported that F.H. drank less and, consequently, behaved more tolerably. However, even if F.H. drank less often, he

8

still consumed alcohol to excess at times. During these times, as we have discussed, F.H. acted aggressively, violently, and neglectfully towards the minors. In light of these incidents, the fact that F.H.'s alcohol problem had improved does not mean the court could not reasonably find that F.H. still presented the requisite risk to the minors' physical safety.

F.H. claims that the children were not present while F.H. was drinking during the voluntary services period. But the minors were present during both the stove fire incident and the incident where F.H.'s aggressiveness towards the minors and April caused the police to be called. While the minors were not injured during these two incidents, or during the other fires, evidence of injury is not required to sustain a finding under section 300, subdivision (b). (See *In re T.V., supra*, 217 Cal.App.4th at p. 134.) The aggression, violence, and neglect shown by past incidents—even setting aside the actual past injury to N.H.—is sufficient to sustain the juvenile court's finding here.

F.H. also claims that the record "doesn't refute" F.H.'s testimony that he did not notice any symptoms of S.H.'s diabetes. While it may be undisputed that F.H. did not notice these symptoms, the reports of medical professionals show that S.H. must have exhibited symptoms. The fact that F.H. did not notice only confirms his neglect.

Unlike *In re David M.* (2005) 134 Cal.App.4th 822, on which F.H. relies, the risk of harm here is not speculative. In that case, the social services agency alleged only that the mother and father were mentally ill and that the mother had substance abuse problems. (*Id.* at p. 829.) There was no evidence of any impact on the minors in that case. As the court explained, "the evidence of mother's mental and substance abuse

9

problems and father's mental problems was never tied to any actual harm to [the minors], or to a substantial risk of serious harm." (*Ibid.*) By contrast, the record here contains evidence of the aggressive, violent, and neglectful actions that F.H. has committed and that create the substantial risk of serious harm the juvenile court found. Similarly, this case is distinguishable from *In re J.N.*, where the parents drove while intoxicated, resulting in injury to the minors. (*In re J.N., supra*, 181 Cal.App.4th at pp. 1014-1016.) The evidence in *In re J.N.* demonstrated only a single episode of risky behavior. (*Id.* at p. 1022.) Here, F.H.'s actions show a continuing problem with alcohol abuse and a pattern of potentially endangering conduct. Based on this evidence, as we have explained, the juvenile court's assessment of the risk of future harm was reasonable.

## DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.