Filed 5/13/15  Melinda C. v. Super. Ct.CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MELINDA C., | |
| Petitioner, | |
| v. | |
| THE SUPERIOR COURT OF ORANGE COUNTY, | G051618 |
| Respondent; | (Super. Ct. No. DP023872) |
| ORANGE COUNTY SOCIAL SERVICES AGENCY et al., | O P I N I O N |
| Real Parties in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Dennis J. Keough, Judge.  Petition denied.

Law Office of Patricia Smeets Rossmeisl and Patricia Smeets Rossmeisl for Petitioner.

No appearance for Respondent.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Law Office of Harold LaFlamme and Jess Ann Hite for the Minor.

\*          \*          \*

Petitioner contends substantial evidence does not support the juvenile court's orders to remove the minor from her custody and set a hearing to terminate her parental rights following the filing of a Welfare and Institutions Code section 387 supplemental pleading.  (All statutory references are to the Welfare and Institutions Code.)  We deny the petition.

I

FACTS

The minor, A.C., now three years old, was born with a positive toxicology screen for amphetamine and methampthetamine.  The Los Angeles Superior Court declared A.C. a dependent child of the juvenile court.  She was put under the care of the Department of Children and Family Services, placed in a licensed foster home at first and later in the home of a maternal aunt.

The minor's mother Melinda C., the petitioner here, argues the juvenile court lacked substantial evidence the minor would be at risk if returned to her.  The minor's father, Adrian R., has a history of substance abuse and as of June 2012 "is a current abuser of methamphetamine, marijuana, alcohol and pain medication."  Both parents have long criminal histories.

A dependency petition filed on behalf of the minor's half sibling M.L. was sustained in 2009 because petitioner "created an endangering home environment for the

2

child in that excessive pornographic materials, including videos and magazines belonging to the maternal grandfather, were found in the child's home. . . ." Petitioner "has an unresolved history of substance abuse and is an abuser of methamphetamine . . . ." Petitioner and M.L.'s father Marc L. have a history of "domestic violence in the child's presence . . . ." After family reunification in the case involving M.L. was terminated in 2011, the juvenile court ordered a guardianship and permanent placement services for M.L.

With regard to petitioner and the minor, the juvenile court ordered family reunification services for petitioner. No reunification services were ordered for the father.

On June 3, 2013, the Los Angeles juvenile court ordered the minor placed with petitioner. Shortly thereafter, when the minor was 13 months old, petitioner moved into the home of the relative caregiver and the minor in Orange County, and the case was transferred to Orange County. On June 25, 2013, the minor was declared a dependent child of Orange County juvenile court.

A few weeks after the minor's second birthday, the mother missed some drug tests. Shortly thereafter, she tested positive for methamphetamine. The mother admitted to a social worker she used methamphetamine. Then on August 19, 2014, "the mother submitted a diluted test." On July 3, 2014, a protective custody warrant was issued by the juvenile court to remove the minor from the custody of petitioner. The social worker was also concerned the child had been taken by petitioner and the maternal aunt to the home of her maternal grandfather, the man who endangered the welfare of the minor's half sibling.

Petitioner was sent to a new residential treatment program. The therapist reported "the mother refrained from answering questions about the past" and the therapist expressed if there were no improvements, petitioner would have to move on to a different therapist. With regard to petitioner's visitations with the minor, the caregiver stated to a

3

social worker: "They're going alright. Melinda plays with her, but if [A.C.] cries, I'll have to tell her to comfort her. She won't do it on her own." Petitioner claimed she was "too tired" to comfort the minor. In August 2014, the social worker reported: "[T]he prognosis for this case is poor. It appears appropriate for the child, [A.C.], to remain in out-of-home care. It is respectfully recommended that the Court continue dependency, with no Family Reunification services offered to the child's mother . . . ."

Petitioner was sent to a new therapist who reported petitioner's insight was limited. Later, the therapist stated about the petitioner: "On the surface, everything is there. She's on time. She talks. It might not be possible for her to connect the dots on a deeper level . . . I feel she means well. We just aren't getting there."

On July 8, 2014, a supplemental petition pursuant to section 387 was filed. Some of the allegations in the supplemental petition, as interlineated by the juvenile court, state: "On June 21, 2014, the mother, Melinda [C.], tested positive for methamphetamine. On July 3, 2014, the mother, Melinda [C.], initially reported she is still taking Oxycodone from a surgery that she had on May 13, 2014, and believed that was the cause of her positive test for methamphetamine. The mother's prescription medication would not cause a positive result for methamphetamine. In the evening of July 3, 2014, the mother admitted she used methamphetamine on one occasion, and that she missed her drug test that day. [¶] The mother has missed the following drug tests: January 31, 2014; February 22, 2014 (due to being out of town); February 28, 2014; May 13, 2014 (due to having surgery for gallstones); June 3, 2014; and June 24, 2014."

On March 5, 2015, the juvenile court found the allegations in the supplemental petition to be true by a preponderance of evidence "bringing the child within the provisions of section(s) 387 of the W&I Code." The juvenile court expressed concern about petitioner's "series of missed tests." The court also commented: "One of the concerns that the court had in listening to testimony was a certain amorphous or a fuzziness regarding mother's present living situation." Further, the court found that both

4

petitioner and the maternal aunt lacked credibility, particularly with regard to going to the maternal grandfather's house. The court found the time for reunification services had lapsed. The juvenile court found by clear and convincing evidence that section 361, subdivision (c)(1) applies. A hearing pursuant to section 366.26 is calendared for July 6, 2015.

II

DISCUSSION

Petitioner contends she "had a one-time relapse after almost two and a half years of sobriety. Adoption should not be the punishment for a relapse especially when mother immediately re-enrolled in services and maintained an extended period of sobriety at the time of the hearing."

We review the court's jurisdictional and dispositional findings in a section 387 hearing for substantial evidence. (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) And we also review a juvenile court's decision to remove a child from a relative caretaker under the substantial evidence test. (*In re H.G.* (2006) 146 Cal.App.4th 1, 12.) "The burden is on the party or parties challenging the findings and orders of the trial court to show there is no evidence of a substantial nature to support the finding or order. [Citation.]" (*Id.* at p. 13.)

In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child. (§ 387, subd. (b); Cal. Rules of Court, rule 5.565(e)(1).) If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. (Cal. Rules of Court, rule 5.565(e)(2).) A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1211; *In re Joel H.* (1993) 19 Cal.App.4th 1185.) The only fact necessary to modify a previous

5

placement is that the previous disposition has not been effective in protecting the child. (*Id.* at p.1200; § 387, subd. (b).)

"When a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to '"square one"' with regard to reunification efforts. [Citations.]" (*Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 166.) "If a dependent child was returned to the custody of a parent or guardian at the 12-month review or the 18-month review or at an interim review between 12 and 18 months and a 387 petition is sustained and the child removed once again, the court must set a hearing under section 366.26 unless the court finds there is a substantial probability of return within the next 6 months or, if more than 12 months had expired at the time of the prior return, within whatever time remains before the expiration of the maximum 18-month period." (Cal. Rules of Court, rule 5.565(f).)

Section 387 provides that a supplemental petition seeking to remove a child from the physical custody of a relative may be filed based upon a statement of facts showing that the previous disposition has not "been effective in the rehabilitation or protection of the child." (§ 387, subd. (b).) A section 387 hearing is bifurcated into "(1) an adjudicatory hearing on the merits of the allegations in the petition and (2) a disposition hearing on the need for the removal of the [children] from [their] current level of placement." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 460.)

"A dependent child shall not be taken from the physical custody of his or her parents or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances . . . :  [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's custody." (§ 361, subd. (c)(1).)

In *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, cited by petitioner, the basis for the juvenile court's finding of detriment to a child was the mother's missed, diluted and positive drug tests. (*Id.* at p. 1346.) But in that case, "no one offered testimony linking Mother's marijuana and alcohol use to her parenting judgment or skills." (*Ibid.*) Here, circumstances are quite different. Petitioner's methamphetamine use and the risks she posed to the minor were the principal reasons the court exercised its jurisdiction over the minor shortly after her birth.

Petitioner also cites *In re David M.* (2005) 134 Cal.App.4th 822 to support her position. In that case, the court exercised its jurisdiction over two children in order to ensure their safety and well-being after their mother tested positive for marijuana metabolites at the time of the younger child's birth. (*Id.* at p. 825.) Despite mother's use of marijuana during pregnancy, the baby tested negative for any drugs at birth. (*Ibid.*) Of course the situation in the instant case is quite different. Here, both petitioner and the minor had positive toxicology screens when the minor was born. Petitioner admitted using methamphetamine 10 hours before labor began, explaining she was well aware of the danger she posed to her baby, but that she was "tired of being tired." Also, petitioner had already lost custody of her first child partially due to her use of methamphetamine.

Just after the minor turned two years old, following significant services, programs and therapy provided to petitioner, she returned to using methamphetamine. From the court's statements that petitioner's "unresolved issue of substance abuse is significant," and "the child cannot be safely returned to the home," we assume it became obvious to the juvenile court that petitioner was still willing to risk the minor's safety and health. Further, the court had therapists' reports that petitioner had limited insight and was unable to "connect the dots."

Petitioner began using methamphetamine when she was 18 years old, and she is now almost 39 years old. We can hardly question the juvenile court's apparent determination petitioner is not committed to stop her use of methamphetamine and the

7

court's statement the minor cannot be safe with petitioner. Nor can we question the court's concern about the maternal aunt and petitioner taking the minor to the home of the maternal grandfather who presented danger to the minor's older sibling and that placement with them was not sufficient to protect the minor. Under the circumstances we find in this record, we conclude the juvenile court's findings and orders are supported by substantial evidence.

III

DISPOSITION

The petition is denied.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.