Filed 4/11/14  In re A.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.D., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. D.D., Defendant and Appellant. | E058971 (Super.Ct.No. INJ1300161) **OPINION** |

APPEAL from the Superior Court of Riverside County.  Edward Forstenzer, Judge.  (Retired judge of the Mono Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Pamela J. Walls, County Counsel, and Carole Nunes Fong and Kristine Bell-Valdez, Deputy County Counsel, for Plaintiff and Respondent.

D.D. argues that there was insufficient evidence to support orders asserting dependency jurisdiction over her infant daughter A.D. and removing A.D. from her custody. As we will discuss, there was substantial evidence that D.D. was using methamphetamine and, as a result, neglecting A.D. There was also substantial evidence that, even after her child was detained, instead of facing up to her drug problem, D.D. simply denied it. Accordingly, we will affirm the orders from which D.D. appeals.

I

FACTUAL AND PROCEDURAL BACKGROUND

D.D. (mother) and M.D. (father) are the parents of A.D. (sometimes child).

In April 2013, when A.D. was seven months old, a social services agency in Sacramento County received a report[1] that the parents were homeless, "going from hotel to hotel[,] and the child spent most of the time in the car." According to the reporting party, the child was dirty and looked "tired"; the parents never had clean clothes or clean bottles for her. The reporting party also stated that the parents were using heroin and methamphetamine. The report was "[e]valuated [o]ut" because the family could not be found.

---

[1] The reporting party was almost certainly the maternal grandmother, who lived in Sacramento County. The mother later claimed, "This is all going by hearsay that my mother was told by my sister. So my mom got all freaked out and called it in."

2

Just four days later, the parents were arrested in Cathedral City, where they were staying in a hotel room. When the police arrived, they found the parents trying to flush evidence down the toilet. Inside the hotel room, the police found more than 50 fictitious checks and more than 50 gift cards. The police also found caps for syringes; however, they found no syringes and no illegal drugs.

The parents were arrested for forgery (Pen. Code, § 476) and conspiracy (Pen. Code, § 182, subd. (a)(1)).

The mother admitted that the father was supporting the family by "engaging in fraud and making fake checks."[2] The father had "multiple" outstanding felony warrants. He already had a pending forgery charge. He was on probation on a conviction for possession of a controlled substance. He also had previous convictions for burglary (Pen. Code, § 459) and identity theft (Pen. Code, § 530.5, subd. (a)).

The father admitted that he was currently using methamphetamine. However, he claimed that the mother was not currently using drugs.

The mother admitted that, in the past, she had "experimented" with cocaine, mushrooms, marijuana, and alcohol.[3] In 2010, she had been arrested for possession of methamphetamine and placed on drug diversion. (Pen. Code, § 1000 et seq.) She said

---

[2]    In a later interview, however, the mother denied that either she or the father was guilty of the forgery and conspiracy charges.

[3]    In a later interview, however, the mother denied ever using mushrooms, stating indignantly, "I'm not some wild hippy lady that takes mushrooms in the bushes."

that she lived in Sacramento, but she had come to Riverside County to attend a court hearing to "reinstate" her drug diversion.

The mother denied using any drugs since her 2010 arrest. However, when asked to submit to a drug test, "she became angry and refused . . . ." She admitted that a hair follicle test might be positive, though she claimed this was because she was taking "diet pills" and "was in the process of having her wisdom teeth removed."

The mother denied being homeless. In one interview, she said that she lived in "various places" in Sacramento. In a later interview, she claimed that she was leasing an apartment in Sacramento. According to the maternal grandmother, however, the family was not actually living in the apartment because the father "had a bail[] bond[s]man after him, and he was choosing to go from hotel to hotel . . . ."

The Department detained the child and filed a dependency petition as to her.

At the detention hearing, the juvenile court ordered the mother to submit to a drug test. Later, the mother claimed that she had shown up for the drug test; the testing agency, however, had no record of this.[4]

---

[4]    The mother asserts that "there was some sort of confusion about whether or not the referral was submitted to the testing facility and whether there was a record of [her] having been there." There was no evidence of any "confusion." Rather, her attorney simply noted that the mother was claiming that she appeared for testing, but that the testing agency had no record of this. The juvenile court was entitled to conclude that the mother was lying.

The mother also asserts that "it is unclear from the record whether [she] was specifically provided referrals for drug testing in the Sacramento area prior to the hearing." Again, however, her attorney conceded that she received a referral for drug

*[footnote continued on next page]*

Initially, the child was placed in a foster home. The maternal grandmother admitted that she had been in the process of filing a petition for legal guardianship of the child when the dependency intervened. She expressed interest in having the child placed with her.

As of June 2013, the date of the jurisdictional/dispositional hearing, the father remained incarcerated. The mother, however, had posted bail and was not incarcerated; she had returned to Sacramento. The maternal grandmother was being evaluated for placement.

At the jurisdictional/dispositional hearing, the juvenile court found the following allegations true:

"b-1 The mother . . . has a chronic history of abusing substances, including, but not limited to, methamphetamine, cocaine, marijuana, mushrooms, and alcohol. Such conditions place the child at risk of suffering serious physical and/or emotional harm.

"b-2 The father . . . abuses controlled substances, including, but not limited to, methamphetamine . . . . Such conditions limit the father's ability to provide his child with adequate care, endangers the child's safety and well[-]being, and creates a detrimental home environment.

*[footnote continued from previous page]*
testing in Riverside County and noted that she claimed to have appeared pursuant to that referral.

"b-4  The mother . . . has a criminal history including[,] but not limited to, an arrest for Possession of Controlled Substances.  Further, . . . the mother was arrested for Forgery and Conspiracy.  Such conditions place the child at risk of suffering serious physical and/or emotional harm.

"b-5  The father . . . has a criminal history including[,] but not limited to, arrests for Possession of Controlled Substances, Burglary, and various fraud[-]related charges. Further, . . . the father was arrested for Forgery and Conspiracy.  Such conditions place the child at risk of suffering serious physical and/or emotional harm."

"g-2  The father . . . is currently incarcerated, his exact release date is unknown, and he is unable to provide care and support for his child."

The juvenile court found that it had jurisdiction based on failure to protect (Welf. & Inst. Code, § 300, subd. (b)) and, solely as to the father, failure to support (*id*., § 300, subd. (g)).  It formally removed the child from the parents' custody.  It found that reasonable efforts had been made to prevent or eliminate the need for removal.  It ordered that the parents be provided with reunification services.  It then transferred the case to Sacramento County.

6

## II

## JURISDICTIONAL ORDERS

The mother contends that there was insufficient evidence to support the juvenile court's jurisdictional findings.

Under Welfare and Institutions Code section 300, subdivision (b), the juvenile court has jurisdiction based on failure to protect when: "The child has suffered, or *there is a substantial risk that the child will suffer, serious physical harm or illness*, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, *or by the inability of the parent or guardian to provide regular care for the child due to the parent's* or guardian's mental illness, developmental disability, or *substance abuse*. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (Italics added.)

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children

who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' [Citation.] 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] . . . [Citation.]" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

Here, the father was incarcerated indefinitely, which left the child in the sole care of the mother. And there was substantial evidence that the mother was abusing drugs.[5]

---

[5]  The Department argues that the juvenile court could take jurisdiction based solely on the father's admitted drug use and criminal activity (allegations b-2, b-5, and g-2). However, if the father was incarcerated, but the mother was taking adequate care of the child in his absence, the juvenile court could not base jurisdiction on the father's incarceration alone. (See *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662, 672.) Likewise, if the father was using drugs, but the mother was not, and if, as the mother argues, there was insufficient evidence that either parent's drug use exposed the child to any significant risk, then once again, the juvenile court could not base jurisdiction on the father's drug use alone. (See *In re David M*. (2005) 134 Cal.App.4th 822, 830.)

Just four days before the detention, there was a report that both parents were using heroin and methamphetamine. Caps for syringes were found in the parents' hotel room. It is true that the mother denied using any drugs since her 2010 arrest. However, the father was admittedly using methamphetamine. The nature of drug abuse is such that it would be very difficult for a former methamphetamine user to live with a current methamphetamine user without relapsing. The mother was not in compliance with her drug diversion; she had come to Southern California to get it "reinstate[d]." At the time of the detention, she was asked to take a drug test; she angrily refused. Later, she admitted that a hair follicle test might be positive. While she attributed this to diet pills and dental treatment, the juvenile court was not required to believe her, especially in the absence of any corroborating evidence. Finally, even after the juvenile court ordered her to take a drug test, she failed to do so.

"'[C]ases finding a substantial physical danger tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment — typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. [Citations.]' [Citation.] . . . [I]n cases involving the second group, the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M*. (2012) 211 Cal.App.4th 754, 766-767.)

In any event, there was also substantial evidence that the mother was failing to provide necessary care for the child due to her substance abuse. According to the report to the Sacramento County social services agency, the family went from hotel to hotel, the child spent most of the time in the car, she was dirty, and she never had clean clothes or clean bottles. The mother partially corroborated this, admitting that she lived in "various places" in Sacramento. Particularly in light of the helplessness of a seven-month-old child, this was substantial evidence that the child was at risk of serious physical harm or illness. (Cf. *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453 [evidence that, when father used marijuana, he was irritable, yelled at the children, suffered panic attacks, and used corporal punishment supported finding of jurisdiction under Welf. & Inst. Code, § 300, subd. (b)].)

The mother argues that the report to the Sacramento County social services agency was not substantial evidence because it was "[e]valuated [o]ut." However, this does not mean that it was found to be false or groundless. The report was evaluated out solely because the parents and the child could not be found. (See California Department of Social Services, Child Welfare Services Manual of Policies and Procedures, § 31-115(a) ["The decision whether or not an in-person investigation is necessary shall include, but not be limited to, consideration of the following factors: [¶] (a) The ability to locate the child alleged to be abused and/or the family."].[6]) Moreover, it appears that the reporting

_____

[6]  Available at <http://www.dss.cahwnet.gov/ord/entres/getinfo/pdf/cws2.pdf>, as of Mar. 18, 2014.

10

party was the maternal grandmother, who reasonably would have knowledge of the child's circumstances. Thus, the juvenile court could properly regard the report as substantial evidence.

The mother also relies on the social worker's statement in the detention report, "It was unknown if the parents abused drugs in the child'[s] presence and exposed her to danger." However, this was just the social worker's opinion. The juvenile court could reasonably conclude that, because the family was living in hotel rooms, the parents' drug use more likely than not occurred in the presence of the child. Separately and alternatively, it could also conclude that, even assuming they did not use drugs in the child's presence, their drug use still posed a substantial risk to the child's health.

We therefore conclude that there was substantial evidence to support the juvenile court's finding of jurisdiction.

### III

### DISPOSITIONAL ORDERS

The mother contends that there was insufficient evidence to support the juvenile court's removal findings.

"Before the court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. [Citations.] The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home. [Citations.] The parent need not

11

be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.] We review the court's dispositional findings for substantial evidence. [Citations.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136.)

Here, the same evidence that supported jurisdiction also supported the removal of the child from the home. The mother argues that there were other reasonable means for protecting the child short of removal; she suggests that she could have been required to provide clean drug tests, attend parenting classes, and participate in counseling. However, the mother had already been ordered by the court to drug test, yet she failed to do so. This was substantial evidence that merely directing her to participate in these and similar reunification-type services would not be adequate to protect the child.

The mother also suggests that she could have been required to live with the maternal grandmother. At the time of the disposition hearing, however, the maternal grandmother's home had not yet been cleared for placement. In addition, the mother told a social worker that she had a "weird" relationship with the maternal grandmother — "She's my mom and I love her, but we don't always get along." Thus, the juvenile court could reasonably find that this particular living arrangement was not feasible and would not protect the child.

12

IV

DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.