Filed 4/30/14  In re M.O. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.O. et al., Persons Coming Under the Juvenile Court Law. | B249828 (Los Angeles County Super. Ct. No. CK75817) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. REINA A., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen Marpet, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Tracey F. Dodds, Deputy County Counsel for Plaintiff and Respondent.

Reina A. appeals the jurisdictional findings and dispositional orders of the juvenile court with respect to six of her children. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Reina A. (mother) and Miguel O. (father) are the parents of seven children, six of whom are the subject of this appeal: Miguel (age 12 at the time the petition was filed), Joseph (11), Jacob (9), Mikey (6), Jonathan (2), and newborn Nathan O. The family first came to the attention of DCFS when Miguel tested positive for marijuana at birth. Mother declined services from DCFS. In June 2008, the family entered into a Voluntary Family Reunification program because of the parent's drug use, and in January 2009, a section 300 petition was filed on behalf of another son, Daniel. Parental rights were terminated as to Daniel, and he was adopted by his maternal grandmother.

In July 2011, DCFS provided Voluntary Family Maintenance services with Family Preservation Services to the family due to mother's substance abuse. Mother failed to enroll in a drug rehabilitation program, and tested positive for drugs in December 2012. The Department closed its case with the family after mother signed a notarized letter giving custody of the children to the paternal grandparents.

DCFS received a referral in March 2013 when Nathan tested positive for methamphetamines at his birth. Mother signed a notarized letter granting the maternal grandmother permission to care for Nathan upon discharge from the hospital. Mother told the social worker that she and father have allowed the older children to remain with the paternal grandparents as they were not financially stable and did not have a place to live with the children. The social worker explained to mother that because the paternal grandparents did not pursue a more permanent arrangement for the care of the children, the Department would need to include the older children in a petition filed with the juvenile court.

The parents attempted a Team Decision Making Meeting at the Department's office. Mother admitted she was an addict and was "tired" of her addictive lifestyle.

2

Both mother and father said they wanted a different life for themselves. They agreed that mother would enroll in the Prototypes residential drug rehabilitation program. The parents agreed that the five older children be detained with the paternal grandparents, and Nathan would reside with mother in her drug treatment program.

Mother had a difficult time adjusting to the Prototypes program. According to her counselor at the program, mother wanted to leave because she missed her children. Mother had begun to consider giving Nathan to maternal grandmother so that she could leave the program. Her counselor opined that mother needed to stay in the program and intensively address her long history of substance abuse.

On March 28, 2013, DCFS filed a petition pursuant to Welfare and Institutions Code[1] section 300, subdivision (b), based on the parents' history of drug abuse and Nathan's positive toxicology test at birth. Nathan was released to mother's custody on the condition she remained in her residential drug treatment program; the other children were detained and placed with the paternal grandparents, where they had been living since 2012.

In its jurisdiction/disposition report of May 6, 2013, DCFS reported that mother freely acknowledged that she was a drug addict, but that she wanted to stop and change her life for herself and her children. The paternal grandmother told the social worker that originally she had four of the children and was only going to care for them temporarily, while mother completed a program. However, mother never completed the program. Father said that paternal grandmother needed his help caring for the children, because the paternal grandfather was a trucker and worked many hours. Father stayed with the paternal grandparents three days per week to help with the children's care.

At the May 16, 2013 adjudication hearing, father entered a plea of no contest to the amended allegation concerning his substance abuse. Mother moved for a directed verdict pursuant to section 350, subdivision (c), contending that DCFS did not provide

---

[1] Further statutory references are to this code.

3

legally sufficient evidence to support the petition. She argued she did not harm Nathan by her drug usage, pointing to the fact that Nathan had an "Apgar score" of 8 shortly after his birth, and suffered no ill effects from his exposure to mother's drug use. She further maintained that Nathan was not at risk of harm based on the Department's recommendation to place him with her. She also argued that since the other children were not in her care while she was abusing drugs, they were never at risk of harm.

The juvenile court denied the directed verdict motion, stating that the detention report indicated that mother used methamphetamine twice a week during the pregnancy. The court sustained the petition as amended and declared each of the children dependents of the juvenile court. Nathan was placed with his mother, while the older children remained placed with the paternal grandmother. Both parents were provided reunification/maintenance services, including random drug testing, individual counseling, a parenting course, drug counseling, and monitored visits.

Mother timely filed a notice of appeal of the findings and orders made on May 16, 2013.

DISCUSSION

1. *The jurisdictional finding*

Mother contends that the record is devoid of substantial evidence to support the juvenile court's jurisdictional finding that the children were at substantial risk of physical harm pursuant to section 300, subdivision (b).

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or

4

exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'" [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)' (See also *In re Angelia P.* (1981) 28 Cal.3d 908, 924.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Section 300, subdivision (b) permits a court to assume jurisdiction over a child where "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." Subdivision (b) jurisdiction may be premised on either injuries already suffered or the risk of suffering those injuries in the future.

Mother does not dispute the fact that she used methamphetamines. Rather, she contends that her drug usage, without more, is insufficient for jurisdiction, analogizing her situation to the parents in *In re Destiny S.* and *In re David M.*

In *In re Destiny S.* (2012) 210 Cal.App.4th 999, the mother of an 11-year-old child admitted to a history of methamphetamine use and current marijuana use. The evidence was uncontroverted that the child was well cared for by her mother, and in the months leading up to the jurisdictional hearing, the mother tested negative for drugs. (*Id.* at p. 1002.) The appellate court reversed the assumption of dependency jurisdiction over the child because it was based solely on the mother's drug use. (*Id.* at p. 1003.) However, the appellate court found that there was no evidence that the mother's drug use had caused her to neglect her daughter. Moreover, at 11 years old, the child "'was old

5

enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life.' [Citation.]" (*Ibid.*)

In *In re David M.* (2005) 134 Cal.App.4th 822, the court held that the evidence was insufficient to support dependency jurisdiction under section 300, subdivisions (b) and (j). As a result of his mother testing positive for marijuana when giving birth to A., two-year-old David and A. were detained. (*Id.* at p. 825.) The section 300 petition alleged that the parents were unable to care for the children due to their mental health problems and the mother's substance abuse problem. (*Id.* at pp. 825-826.) However, the record before the juvenile court was lacking "any evidence of a specific, defined risk of harm to either David or A. resulting from mother's or father's mental illness, or mother's substance abuse." (*Id.* at p. 830.) "A. tested negative for all controlled substances" and "was completely healthy at birth." (*Id.* at p. 826.) Likewise, "[t]he evidence was uncontradicted that David was healthy, well cared for, and loved, and that mother and father were raising him in a clean, tidy home. Whatever mother's and father's mental problems might be, there was no evidence those problems impacted their ability to provide a decent home for David." (*Id.* at p. 830.)

Unlike *Destiny S.* and *David M.,* here there was no evidence that mother and father could raise the children in a wholesome environment in spite of their drug use. Rather, they admitted that they were unable to provide a home for their children, and gave them to relatives. But this was not intended to be a long-term solution. The paternal grandparents had agreed to take the children with the understanding that they were only to care for them while mother completed a rehabilitation program. At the time of the jurisdictional hearing, however, mother had not successfully completed such a program.

Section 300.2 provides that the purpose of the provisions in the Welfare and Institutions Code relating to dependent children is to provide protection for children being harmed or who are at risk of being harmed. Section 300.2 further states that "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of

6

the child." Here, mother voluntarily placed five of her children with a relative while she continued to abuse drugs. She was not financially stable and could not provide the children with the necessities of life. She did, however, recognize that her lifestyle was not compatible with parenting her children, and she wanted that to change. Mother's inability to free herself from her addiction rendered her incapable of caring for her children. Substantial evidence supports the juvenile court's finding that the children were described by section 300, subdivision (b).

    2.    *The dispositional order removing the older children from mother*

Mother contends that the juvenile court did not have substantial evidence to support a finding, by clear and convincing evidence, that it would be detrimental for the children to remain in mother's care.

Under section 361, a juvenile court may remove physical custody of a child from a parent where it finds, by clear and convincing evidence, that there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child, or there would be if the child were returned home, and there are no reasonable means to protect the child without removal from the parent's custody. (§ 361, subd.(c)(1).) The determination of whether the child will suffer a substantial risk of detriment if returned to the parent is analyzed under the substantial evidence test. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038 ["on appeal, the substantial evidence test applies to determine the existence of the clear and convincing standard of proof, the same as in other cases"].)

Under the substantial evidence test, this court considers the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) Where there is any substantial evidence to support the judgment, contradicted or not, this court must affirm the decision. (*Ibid.*) "[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence . . . " (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53) and have "no power to

7

judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence." (*Id.* at pp. 52-53.)

Here, mother acknowledged that she was incapable of caring for her children. Indeed, she had previously agreed with DCFS's assessment that the children should be cared for by a relative, and had arranged for the children to the live with, and be cared for by, the paternal grandparents. The court's order of suitable placement was ratification of a fact already known to and accepted by mother, that she was incapable of caring for her children. Substantial evidence supported the findings and order of the juvenile court.

DISPOSITION

The findings and orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[*]    Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8