Filed 11/19/14  In re E.R. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re E.R., et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B253814<br>(Los Angeles County<br> Super. Ct. No. DK01990) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JOSE R.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court for Los Angeles County, Julie Fox Blackshaw, Judge.  Reversed.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Jose R. (father) appeals from the jurisdiction and disposition orders of the juvenile court with respect to his six children. He contends there is insufficient evidence to support the juvenile court's assumption of jurisdiction over the children under Welfare and Institutions Code[1] section 300, subdivision (b), or the court's removal of the children from his custody and care. We agree, and reverse the order.

## BACKGROUND

In October 2013,[2] Father and Veronica M. (mother), who had been married for 16 years, were living together with their six children, ranging in age from 14 to almost three years old. On or before October 10, father was interviewed as part of an investigation by the Department of Children and Family Services (the Department) regarding his child with another woman, Rita S. The interviewer noticed that father had bloodshot eyes and was very thin, and believed that father might be under the influence of drugs. Father agreed to submit to an on-demand drug test. The results showed that father was positive for amphetamines and methamphetamine. Based on the positive test results, a referral was made on October 16, alleging general neglect by father and mother toward their six children.

On October 16, a social worker from the Department made a home visit to father's and mother's home. Although the social worker observed that the home was dingy, she noted that all utilities were in working order, no visible safety hazard was present, and there was no indication of drug or alcohol abuse in the

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

[2]    All references to dates are to the year 2013 unless otherwise indicated.

2

home.  The social worker privately interviewed and/or assessed each member of the family.

The social worker observed father interacting with his son, and the son appeared comfortable and attached to father.  During her interview with father, she noted that father "appeared jittery and spoke at a rapid speed" at the beginning, but eventually calmed down and was articulate and coherent.  She also noted that the whites of his eyes were dark red.  When asked about the referral allegations, he said that he had not caused harm to anyone.  He admitted using drugs two days before he was tested.  He told the social worker that he only uses methamphetamine.  He said he started using it about two years before, and uses it sporadically.  He uses it in private, in the garage, and the children are never present.  When asked whether he considers his methamphetamine use a problem, father said he did not because he is able to work and provide for his family.  He told the social worker that he had never considered enrolling in a drug treatment program, and did not want to because his family depends on him financially, but he said he was willing to do anything.

During the interview with mother, mother told the social worker that she was not aware that father used drugs, and had never witnessed father using drugs or alcohol.  She said that father's rapid speech was common, and that their eldest daughter also has rapid speech.  She also told the social worker that father's bloodshot eyes were due to his construction job, because he often gets dust and insulation flakes in his eyes.  Mother agreed to submit to an on-demand drug test; the results were negative for all substances, including alcohol.

The social worker interviewed the five oldest children individually, and assessed the youngest, who was too young to be interviewed.  The social worker observed that all of the children were clean, neatly groomed, and appropriately dressed.  All were easy to engage, and the four oldest were verbally articulate.

3

None showed any signs of abuse or neglect. The three oldest denied knowing of any drug or alcohol use in the home; the fourth oldest denied seeing anyone smoking anything or excessively drinking beer or alcohol.

Father and mother attended a Team Decision Meeting (TDM) the following day. The social worker told the parents about the dangers of methamphetamine use, and the risks it poses to children in the user's care. Father admitted that he last used methamphetamine on October 8, and that he occasionally smokes marijuana. He agreed to be tested the next day. He also said that he did not believe his drug use was a problem, and rejected the possibility of participating in an inpatient drug treatment program. He emphasized how much he cares for his children, and said that he was willing to do anything for them so long as he could remain in the home. Mother told the social worker that she was willing to kick father out of the house if he continued to use drugs, in order to protect the children. Father and mother said they both were willing to cooperate with the Department and participate in services. As part of a TDM Safety Action Plan that was formulated at the meeting, father agreed to enroll in a drug treatment program and to be enrolled in random drug testing; mother agreed to ask father to leave the home if he tested positive, and father agreed to comply with that request.

The next day, father tested positive for amphetamines and methamphetamine. When the social worker called father to tell him the results of the test a few days later, father denied using drugs since October 8. He said he would not move out of the house because he had nowhere to go. Father and mother met with the social worker at the Department's office the following day. The social worker told father that if he did not voluntarily move out of the house and relinquish custody of the children, the Department would seek a removal order and detain all of the children from their parents' care. After mother started to cry and told father he had to leave, father agreed to leave his home and gave verbal

4

consent for the Department to remove the children from his care and custody. Father also submitted to a random drug test that day, October 23, and tested negative for all substances.

The Department filed a petition a few days later, alleging a single count under section 300, subdivision (b). The petition alleged that father has a history of substance abuse and is a current user of methamphetamine and amphetamines, which renders him unable to provide regular care and supervision to his six children.[3] In the detention report filed for the October 28 detention hearing, the Department reported on the social worker's interviews of and meetings with the family, and noted that father was employed and was a willing financial provider for his family. The Department also reported that the social worker determined that "[b]ased on [father's] continued use of amphetamine and methamphetamine and his failure to acknowledge responsibility for his actions and possible drug problem, the family can be categorized as having a 'moderate' risk for further abuse." The Department stated that continued detention from father is necessary to protect the children because father "admitted to using meth on a regular basis but does not recognize the risk this presents to his children." The Department recommended that the children be left in mother's care.

At the October 28 detention hearing, the juvenile court asked counsel for the Department to articulate what is the risk to the children caused by father's presence in the home. Counsel stated, "The risk is that methamphetamine is a dangerous drug. It does have an effect on users. And that the fact that the worker observed him appearing jittery and speaking at a rapid speed." The court asked, "But the risk to the children?" Counsel responded, "He was under the influence. He's been

---

[3] The petition also alleged in that count that mother knew or reasonably should have known of father's drug use, and failed to protect the children. The petition later was amended to strike that allegation.

5

in the home. He's a caretaker with the mother. And we believe that that creates risk." Counsel for the children interjected, "Your Honor, I believe the risk would be how can he properly care for the children while he's under the influence of such a dangerous substance?" Father's counsel argued that the Department's showing of risk was inadequate.

The court found a prima facie case that the children were persons described by section 300, subdivision (b). But the court also found that the Department did *not* make reasonable efforts to prevent removal, and that there are services available to prevent detention. The court ordered the children released to both parents, and ordered the Department to provide family maintenance services, to include continued drug testing by father, unannounced home visits, and a drug and alcohol program for father.[4] The court explained that although father admitted using methamphetamine and had positive tests, there was no evidence that his methamphetamine use "has in any way affected the children. And although methamphetamine is a very serious drug and can lead to very serious addiction and substance abuse, that evidence is not before the court today." The court noted that it "has decided that there is not a substance abuse problem yet."

Five weeks later, the Department filed an ex parte application and again sought to detain the children from father's custody. In a report submitted in advance of the second detention hearing on December 5, the Department reported that father had enrolled in a drug and alcohol program, was attending NA meetings, and was drug testing. He had negative tests on November 13 and November 19. Although the results showed that the sample was diluted, the testing collection site confirmed that the results were valid. The social worker spoke to

---

[4] We note that the minute order for the October 28 detention hearing incorrectly states that the court found that reasonable efforts *were* made to prevent the need for removal, and that temporary placement and custody of the children rested with the Department.

father on November 25, and told him that the samples were diluted; the social worker suggested that father limit his liquid intake before the random testing. On November 26, father tested positive for amphetamines and methamphetamine.

The Department reported that at a TDM held on December 2, father admitted that he used methamphetamine on November 24. He said that he had gone out and used methamphetamine that day because of stress at home. He stayed out all day, and went straight to bed when he got home that evening; he went to work the next day. He denied using the drug at home or around the children, and said he made a mistake and wanted to continue to move forward with his treatment. He consented to have his children temporarily removed from his care and custody. Later that day, the social worker conducted a home visit, and confirmed that father had moved out of the house.

The detention report noted that the children and mother stated they were unaware of father's drug usage, and mother reported that she had not observed anything in father's behavior to indicate he had used methamphetamine. The report also stated that the Department "has conducted an assessment and the risk at this time was found to be moderate as to the children. It is the department's assessment that the children . . . are currently not safe in the custody of father . . . and continued detention is necessary. There is a substantial danger to the physical health of the children."

At the detention hearing held on December 5, the juvenile court found a prima facie case for detaining the children, and found that the Department made reasonable efforts to prevent removal of the children from father's custody. The court ordered temporary placement and care of the children to be vested with the Department, and ordered the children to be released to mother pending a further court order.

The Department filed a jurisdiction/disposition report on the same day as the December 5 detention hearing. The Department reported that the children were interviewed on November 25. Each of the four oldest children said that she or he had never seen father use drugs, and had never seen him act in any manner to suggest that he was using drugs. The Department also reported that father said in an interview on November 25 that he did not use methamphetamine on a regular basis, but that he had used it on and off over the past two years.

The jurisdiction/disposition hearing was held on January 6, 2014. The only evidence presented was the October 28 detention report, the December 5 second detention report, and the jurisdiction/disposition report. Counsel for the Department asked the juvenile court to sustain the petition. Father's counsel argued that although the Department showed some drug use by father, it did not show "substance abuse," and it failed to present any evidence connecting father's drug use to harm to the children. Therefore, counsel argued, the Department failed to meet its burden to establish dependency jurisdiction.

When asked by the court to point to evidence of substance abuse and the correlation between father's drug use and risk of harm to the children, counsel for the Department pointed to father's admission that he used methamphetamine on November 24 because of stress at home, which counsel argued connects his drug use to the risk to the children. Counsel also stated that "the Department believes that methamphetamine use, per se, is dangerous and creates a risk to anyone who's around, including the children." Finally, counsel argued that the fact that father used methamphetamine after the court cautioned him not to demonstrates that he has an addiction, which creates risk to the children.

The court noted that when the case was first before it (at the initial detention hearing), "the court did not believe there was a sustainable count." But the court pointed out that father had promised that he would stop his drug use, because he

8

wanted to be with his family and his family needed him, but he did not stop and tested positive for methamphetamine on November 26. The court found that the fact that father made promises he could not keep meant that his drug addiction was such that he could not live up to his own intentions, which the court found qualified as abuse or addition. The court also noted that the fact that he used methamphetamine to get away from stress at home has an impact on the children because, if he is leaving home to take drugs, he is not at home to help the children. For that reason, the court found there was a risk to the children, and found by a preponderance of evidence that the amended count alleged in the petition was true.

Moving on to disposition, the juvenile court found by clear and convincing evidence that there was a substantial danger to the physical health, safety, or physical or emotional health of the children if they were returned to father's custody, and there are no reasonable means to protect them without removing them from father's custody. The court ordered the children to be placed in home of parent-mother, with family maintenance services. Father was ordered to participate in a drug and alcohol program with aftercare, random and on-demand testing, and parenting classes. The court ordered monitored visitation for father, outside the home, although the visits would be unmonitored after six consecutive clean drug tests.

Father timely filed a notice of appeal from the jurisdiction and disposition orders.


**DISCUSSION**

On appeal, father contends the juvenile court erred in finding jurisdiction over the children because the Department failed to present evidence sufficient to show that father's drug use caused physical harm, or presented a substantial risk of physical harm, to the children. We agree.

9

Section 300 provides, in relevant part, that a child is within the jurisdiction of the juvenile court if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." (§ 300, subd. (b).) The purpose of section 300 is "to limit court intervention to situations in which children are threatened with serious physical or emotional harm" as a result of their parents' conduct. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 303.) To establish jurisdiction under section 300, subdivision (b), the Department must show specifically how the child has been or will be harmed by a parent's conduct. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.)

Jurisdictional findings of the juvenile court are reviewed on appeal under the substantial evidence standard of review. We "review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.] 'However, substantial evidence is not synonymous with *any* evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations]." [Citation.] "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)

10

In this case, as noted, the juvenile court concluded the children were within the jurisdiction of the dependency court because father's inability to keep his promise to stop his drug use qualified as substance abuse or addiction, and his use of methamphetamine to get away from stress at home made him unavailable to help care for the children, which presented a risk to the children. Father does not dispute that he used methamphetamine on November 24, and that he stayed away from home on that day, but he argues there is nothing in the record showing that this conduct caused serious *physical* harm to the children or posed a risk of *physical* harm. Instead, he points out that the evidence in the record shows that the children were in good health and showed no signs of trauma or physical abuse.

The Department contends "there was no need to identify any 'specific, defined harm or risk of harm' to the children in order to support jurisdiction," because it presented evidence that father was a longtime drug abuser with drug related convictions dating back to 1992, and because methamphetamine "is an illegal, dangerous drug, the effects of which are inconsistent with adequate parenting." There are two problems with the Department's contention.

First, in asserting that father was a longtime drug abuser, the Department relies upon what is purported to be CLETS results for father, which the Department attached to the December 5 detention report. In fact, those CLETS results (which were not based upon fingerprints) actually were two sets of results for two different people. The first set is for a man who is five feet, nine inches tall, weighing 160 pounds, with hazel eyes and black hair. That man has the same date of birth as father, and the names listed are all variations of father's name. It lists an arrest in 2003 for a hit and run with property damage, deportation proceedings in 2003, and a 2012 conviction for possession of a controlled substance. The second set of results is for a man who is six feet, two inches tall, weighing 225 pounds, with brown eyes and black hair. The man has a different date of birth, and

11

numerous aliases, only one of which is similar to father's name. It lists numerous arrests and/or convictions for transporting and/or selling narcotics/controlled substances from 1992 to 1996. Clearly, the second set of results is for someone other than father.

Second, section 300, subdivision (b) requires some showing of risk of *physical* harm. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727.) The fact that father's sporadic drug use may not make him an ideal parent does not mean his children are at risk of *physical* harm. As our colleagues in Division 8 of this District recently observed in response to a similar argument made by the Department, the argument "excises out of the dependency statutes the elements of causation and harm. In other words, [the Department] essentially argues that, when a parent engages in substance abuse, dependency court jurisdiction is proper. This is not what the dependency law provides. Further, if [the Department's] position were accepted, it would essentially mean that physical harm to a child is *presumed* from a parent's substance abuse under the dependency statutes, and that it is a parent's burden to prove a negative, i.e., the *absence* of harm. Again, this is not what the dependency law provides." (*Id.* at p. 728; see also *In re Destiny S.* (2012) 210 Cal.App.4th 999 [mother's use of drugs, including methamphetamine is insufficient to uphold jurisdiction finding without evidence that child was at risk of suffering physical harm as the result of mother's drug use].)

Because there is insufficient evidence to show that father's drug use caused, or presents a substantial risk that it will cause, physical harm to his children, there is no basis for dependency jurisdiction.

**DISPOSITION**

The jurisdictional order is reversed and all subsequent orders are vacated as moot.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.