Filed 9/15/15  In re S.C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re S.C. et al., Persons Coming Under the Juvenile Court Law. | B261478 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK07867) |
| Plaintiff and Respondent, | |
| v. | |
| M.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Julie Fox Blackshaw, Judge.  Affirmed.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother M.C. appeals from the juvenile court's jurisdictional findings under section 300, subdivision (b) of the Welfare and Institutions Code[1] as to her now 14-year-old daughter E.C. and 17-year-old son S.C., claiming there was not substantial evidence that her substance abuse placed her children at substantial risk of harm. Because mother does not challenge the juvenile court's jurisdictional findings as to father , who is not a party to this appeal, we find that her challenge to jurisdiction is nonjusticiable. And, in any event, mother's claim fails on its merits, as there was substantial evidence that mother's drug use put her children at risk.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 2014, the Los Angeles County Department of Children and Family Services (Department) received a referral, reporting emotional abuse and general neglect of E.C. and S.C. According to the reporting party, mother consumed methamphetamine, heroin, and pain pills, and allowed E.C. to use drugs with her. Mother was never home with the children, but on the streets using drugs.

On September 4, a Department social worker contacted the Avalon Sheriff's Department to inquire about the family. Deputy Torres reported that he visited with the family on August 29, and that he believed the allegations were false, and that mother was caught in the middle of some "island . . . gossip." Deputy Torres was familiar with the family, and did not believe they had a problem with substances. He believed E.C. was "well adjusted." S.C. did suffer from some learning disabilities, but was otherwise not a difficult child. He observed the family's home to be clean with no drug paraphernalia. Deputy Torres did not have any child safety concerns.

The following day, the Department social worker spoke with Wayne Herbst, the Dean of the Avalon Schools. Dean Herbst reported that both E.C. and S.C. attended special education classes for learning disabilities. He had no concerns for S.C., who he described as a "sweet kid." E.C., however, is "very defiant," and "enamored with

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

gangs." The previous year, E.C. struggled with school and friends. She made a number of inappropriate Facebook posts, and was arguing with other students. The current school year was going better, but E.C. did not have any friends. When asked about substance abuse problems with E.C. or at home, Dean Herbst denied any knowledge of drug use, but cautioned that E.C. is "heading toward high risk behavior."

The social worker also interviewed E.C., who appeared clean, sober, healthy, and appropriately dressed. E.C. reported feeling safe at school and at home. She denied any inappropriate discipline, domestic violence, or drug or alcohol abuse in the home. E.C. also denied using drugs. She admitted she had no friends at school, and believed the report to the Department was made "by other students who do not like her."

The social worker also interviewed S.C. He appeared clean, healthy, and appropriately dressed. He was initially reluctant to speak with the social worker, but agreed to be interviewed. S.C. reported that he does well in school, and that he plays football and has plenty of friends. He feels safe at home, and denied any substance abuse or domestic violence in the home. S.C. told the social worker he takes medication for depression and anxiety, but that he currently feels "fine." He also sees a therapist once a week. S.C. consistently denied the allegations in the report to the Department.

School principal Angelica Gonzalez reported that E.C. suffered from behavioral issues, and is known as a "mean girl" at school. E.C. posted false rumors on Facebook. She had been diagnosed with ADHD, and was taking medication for the condition. Principal Gonzalez believe E.C. "to be the type of child to take drugs." However, E.C. never appeared to be under the influence, and had never been caught with drugs or drug paraphernalia on campus. She had been caught with flavored tobacco. S.C. does not have any behavioral issues. He has low academic performance, but is not defiant. According to Ms. Gonzalez, "mother is very dramatic, and father is known to be in and out of the home and [to] be under the influence of alcohol on a daily basis." E.C. was previously in counseling, and the therapist was trying to work with mother to stop rewarding E.C.'s bad behavior. However, the therapist closed the case because the family did not make any progress.

3

On September 24, the social worker spoke with mother. Mother denied the allegations. Mother admitted that she takes prescription pain medications for injuries related to a car accident, but denied that she abuses them. Mother reported taking "oxicod, diposenac, hydroco, cyclobenzaprine, ibuprofen, and/or canesoprodol." Mother consented to an on-demand drug test.

On September 26, the social worker interviewed father, who denied the allegations. He admitted consuming two to three beers every other day.

On October 3, the Department received the results of mother's drug test, which was positive for amphetamine and methamphetamine, but negative for all other substances. When confronted with the positive test, mother denied any drug use other than her prescription medicines.

A Team Decision-Making Meeting (TDM) was held on October 10. The Department discussed its concerns about mother's prescription drug use. Mother was taking multiple medications, prescribed by four different doctors. One doctor had prescribed Hydrocodone for pain, and Diclofenal. Another doctor had prescribed "OxyCod" for pain, and Carisprodol. Other doctors had prescribed Fluoxetine for depression, antibiotics, and weight loss drugs. Mother adamantly denied using methamphetamines, and claimed her prescription medications caused the positive test result. However, the lab was aware of mother's medications, and denied they could cause a false positive result for methamphetamine. When confronted with this information, mother responded "there are a lot of mean people in the Island and that this is not fair." Mother also believed someone at E.C.'s school had made the allegations about the family, and may have tampered with her drug test, as she was present at the testing facility when mother tendered her urine sample. Mother insisted that the Department discuss her medications with the lab again.

When the social worker contacted the lab, and asked whether mother's medications could cause a false positive result for methamphetamine, the lab director informed the social worker that "there are lots of similarities, but [the drugs] will not make you test positive for methamphetamines."

4

At the TDM, father admitted to daily drinking because he was depressed, and admitted to drinking before the TDM. Father denied that mother used methamphetamines. However, he expressed concern about her prescription medication use.

At the conclusion of the TDM, mother continued to deny using methamphetamines. However, she admitted to drinking at bars, and opined that someone might have laced one of her drinks.

Both parents agreed to participate in services. The Department's recommendation was that the children remain with mother and father, under the supervision of the Department.

The Department checked mother's criminal history and discovered that mother had two arrests for disorderly conduct for being intoxicated or under the influence of drugs, one in 2008 and another in 2010. The disposition of these matters was not specified in the report.

At the October 15 detention hearing, the court ordered that the children remain released to mother and father, and ordered that mother and E.C. be provided with drug testing referrals.

The Department's December 4, 2014 jurisdiction/disposition report provided additional information. In a subsequent interview, mother continued to deny use of methamphetamines, and stated that diet pills might have caused a false positive. Mother reported that she participates in a medically supervised weight control program, and takes Phentermine and Phendimetrazine. She provided a note from Dr. Laura Ultabarri, who noted that these medications "can appear as amphetamine in the urine." Mother also provided a letter from Dr. Ronald Grant, stating that these medicines may show up on urine screening tests. Mother also complained that her tests may have been tampered with.

Mother reported that the Department's involvement with her family was causing a great deal of stress, and that she had been unable to sleep and was "extremely anxious."

5

Mother claimed the dependency case was adversely affecting the children, but she did not seek any counseling for them.

Mother tested negative for drugs on October 14, 2014. Mother's November 20, 2014 drug test was positive for methamphetamines and "benzo."

The Department contacted the lab and inquired whether Phentermine and Phendimetrazine could cause mother's positive test. The lab denied that these drugs would cause a positive test for methamphetamine. The social worker was unable to reach Doctors Ultabarri or Grant to ask further questions about their correspondence. The Department spoke with "Jen" at Dr. Grant's office, who confirmed that the drugs could cause a positive test for amphetamine, but not for methamphetamine.

In a last minute information for the court, the Department noted that mother did not show up for a December 3 drug test.

The combined jurisdictional/dispositional hearing was held on December 4, 2014. Mother's counsel argued that the allegations concerning her drug use should be dismissed, because "drug use alone is not enough for jurisdiction" and that there was no nexus between mother's drug use and any harm to the children, because the children were well cared for. Minors' counsel argued that the substance abuse in the home was having an impact on the children, and that the children were "cover[ing]" for their parents, which would have "horrible long-term [effects]." The Department argued that mother clearly had a drug problem, was in denial, and was not dealing with it, creating a risk of harm to the children.

The juvenile court concluded that "the evidence is quite . . . clear that the mother is abusing prescription drugs and using illegal drugs as well. And I do think there is abuse." The juvenile court also found "there is an impact, a nexus, with the children causing a risk to their safety" based on the lack of "follow through" with E.C.'s counseling, and E.C.'s "leaning towards gang behavior." The court expressed its view that "I do not need to wait until . . . some kind of tragedy." The court also explained that S.C. is "developmentally compromised" and therefore at risk.

The court sustained the following allegation in the petition, as to mother:

6

"[Under section 300, subdivision (b),] mother . . . has a history of substance abuse and is a current user of methamphetamines, which renders the mother incapable of providing regular care of the children. On prior occasions in 2014, the mother was under the influence of methamphetamines, while the children were in mother's care and supervision. On 9/25/2014, the mother had a positive toxicology screen for methamphetamines and amphetamines. Such substance abuse on the part of the mother endangers the children's physical health and safety and places the children at risk of physical harm and damage."

The juvenile court also sustained allegations as to father's alcohol abuse. Mother was ordered to participate in drug testing and counseling.

This timely appeal followed.

## DISCUSSION

Mother contends the jurisdictional findings concerning her drug use under section 300, subdivision (b) are unsupported. Because mother does not challenge the jurisdictional findings as to father, mother's challenge to jurisdiction based on her conduct is nonjusticiable. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490-1491; see also *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 ["[A] reviewing court may affirm a juvenile court judgment if the evidence supports the decision on any one of several grounds"].)

Mother acknowledges that jurisdiction over the children is proper because of the sustained allegations as to father, but argues nonetheless that she will be prejudiced if the findings concerning her drug use are allowed to stand because she has been ordered to participate in drug counseling and testing. We disagree that mother has suffered any prejudice, because substantial evidence supports the juvenile court's findings.

The standards for juvenile court jurisdiction under section 300, subdivision (b) are well settled. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) There was ample evidence that mother suffered from a serious drug problem that negatively affected her children. Mother was in denial about her abuse of prescription drugs and of illegal

7

substances, creating a multitude of excuses. Moreover, her children appeared to be covering for her, and were suffering a host of problems themselves.

This case is distinguishable from those relied on by mother, where there was no evidence that a parent's use of substances had a negative impact on the children, and there were no other factors creating safety concerns for the children. (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1002-1005; *In re Drake M.* (2012) 211 Cal.App.4th 754, 768-769; *In re David M.* (2005) 134 Cal.App.4th 822, 830.)

## DISPOSITION

The jurisdictional order is affirmed.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

8