Filed 6/24/16  In re M. M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re M.M. et al., Persons Coming Under the Juvenile Court Law. | B268472 (Los Angeles County Super. Ct. No. DK12025) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JASON M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Annabelle G. Cortez, Judge.  Reversed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel.

_____

Jason M. (Father) appeals from a juvenile court's dispositional order it issued after finding that Father placed his children, Maria M. (Daughter), now almost 12, and Andrew M. (Son), now almost 11 (collectively Children), at risk of physical and emotional harm by repeatedly and unjustifiably involving them in welfare investigations during a custody dispute. Father contends insufficient evidence supports the order. We agree and reverse.

## BACKGROUND

Father and I.M. (Mother) (collectively Parents) have been in a custody battle since 2006. During Parents' battle, the Department of Children and Family Services (DCFS) received 10 reports regarding Children's welfare. After the tenth report, DCFS filed a dependency petition on July 1, 2015, under Welfare and Institutions Code section 300, subdivision (c), alleging Parents emotionally abused Children by repeatedly and unnecessarily embroiling them in Parents' custody battle.[1] On September 11, 2015, DCFS amended the petition to include a subdivision (b) allegation based on the same facts as in the subdivision (c) allegation. DCFS later filed a second amended complaint, adding a second subdivision (b) allegation, asserting Parents' accusations against each other during the custody dispute endangered Children's physical health and safety.

During the combined jurisdiction and disposition hearing on October 23, 2015, DCFS requested the juvenile court strike the first subdivision (b) allegation and the subdivision (c) allegation based on the same facts that Parents emotionally abused Children by harmfully involving them in Parents' custody dispute. The court indicated it would strike those two allegations and consider only the second subdivision (b) allegation that Parents' accusations against each other endangered Children's physical well-being. During oral argument, Mother's and both of Children's counsel asked the court to strike Mother from the remaining second subdivision (b) allegation (regarding Parents' endangerment of Children's physical well-being). Father's counsel, on the other hand, asked the court to strike Father, not Mother, from the allegation. The court sustained the

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

petition on the second subdivision (b) allegation, and struck Mother from the allegation over DCFS's objection; the court also sustained the petition on the subdivision (c) allegation, despite having indicated it struck that ground at DCFS's request, and, like the subdivision (b) allegation, struck Mother.  As DCFS requested, the court did not sustain the petition on the first subdivision (b) allegation (regarding Parents' emotional abuse due to engaging Children in their custody battle).  Father appealed.

## DISCUSSION

On appeal, Father argues the jurisdictional findings and dispositional orders are not supported by substantial evidence.

We review jurisdictional findings and dispositional orders for substantial evidence. (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 58.)  Substantial evidence, however, is not " 'any' evidence" and must be "reasonable in nature, credible, and of solid value." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)  Father "has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding[s]" (*id.*), but if he can, the dispositional orders based on those findings are reversed.  In this review, we "resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)

DCFS argues Father forfeited his arguments because at trial he asserted the court should sustain jurisdiction under the second subdivision (b) allegation as to Mother and did not allege the court should dismiss the entire petition.  We disagree and review Father's arguments because the court did not rule as Father asked or in his favor. (*People v. Barton* (1995) 12 Cal.4th 186, 198 [estoppel applies only if court acceded to party's wishes].)

## A.     Substantial evidence does not support the subdivision (b) physical danger allegations

Under subdivision (b)(1), the court has jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious *physical* harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b)(1), italics added.)  Here, there is no

evidence Children were physically endangered by Father's behavior. The record is devoid of accusations from DCFS, Children, Mother, or any other reporter that Father was violent toward Children or placed them at risk of exposure to violence. The record is likewise devoid of accusations that Parents' custody battle prevented Father from physically caring for Children.

Despite this, DCFS argues "Father's erratic behavior, history of alleging abuse of the children by mother, his refusal to return the children to mother and insistence that DCFS and the dependency court become involved, and his behavior once DCFS and the juvenile court became involved, could have reasonably caused the court to conclude father was not acting in a protective manner or exercising adequate supervision and that his children were at significant risk of suffering physical harm if father's behavior continued to escalate and the family did not receive services." (Record citations omitted.)

DCFS fails, however, to establish a nexus between Father's behavior and risk of *physical* injury to Children. There is no immediate logical connection between involving Children in a custody battle and risk of harm to their physical well-being, and DCFS's attempt to establish a connection here fails. First, alleging a parent failed to act "in a protective manner" is relevant to a subdivision (b) allegation only if the failure to protect is from *physical* harm. That is, a parent could fail to act protectively in certain respects while still protecting the child's physical safety. For example, a parent could fail to protect a child from emotional abuse by a cyber bully, but still protect the child from physical harm. Without a more specific analysis as to how exactly Father failed to act in a "protective manner" toward Children's physical well-being, we do not hold Father failed to protect Children from physical harm.

Second, DCFS presented no evidence Father failed to exercise "adequate supervision" over Children due to the custody dispute such that he jeopardized Children's *physical* well-being. The record contained some evidence that Father may have been

4

negligent in his care of Children in the past,[2] but DCFS did not clearly argue, if at all, during oral argument or on appeal that Father's past neglect is indicative of current abuse or the possibility of future physical neglect. Father also once made statements to a reporting party about possible sexual abuse of Daughter, which led to Daughter being subjected to an examination at the Violence Intervention Program Forensic Clinic.[3] The record does not contain any indication Daughter was scarred by this investigation or she was at risk of future investigations.

The record does contain evidence, however, that Mother physically abused Son. For example, DCFS's jurisdiction and disposition report shows DCFS substantiated allegations that Mother choked Son; it also indicates it determined allegations Mother "smacked" Son on his head were inconclusive. The court, however, struck Mother from the subdivision (b) allegation. In absence of evidence *Father's* poor parenting placed Children at physical risk, we will not consider Mother's physical abuse of Son as grounds for sustaining the petition against Father under subdivision (b).

DCFS also argued to the court that, although not pleaded, there was "information in the reports from Andrew about physical discipline as to him." We will not consider this evidence supporting the subdivision (b) allegation for two reasons. One, the thrust of DCFS's allegations are that Father's involvement of Children in Parents' custody dispute caused them harm, not that Father inappropriately disciplined Son. If DCFS sought to have the court sustain the petition on an allegation different in nature from the stated grounds, DCFS should have requested to submit an amended petition. But, second, even if we were to consider this allegation, DCFS has not shown Father inappropriately disciplined Son. Merely referencing Father's discipline, without explaining the kind of

---

[2] For example, according to DCFS's jurisdiction and disposition report, DCFS sustained a neglect allegation against Father after a doctor diagnosed Daughter with vaginitis due to poor hygiene and wearing a bathing suit too long.

[3] Of note, the examination which resulted in Daughter's vaginitis diagnosis was initiated after *Mother* alleged Daughter may have been sexually abused while in Father's care.

discipline or why it was inappropriate, is not sufficient to sustain a subdivision (b) allegation, especially without any further explanation in DCFS's appellate brief.

In making its ruling, the court blended its analysis of subdivisions (b) and (c) together, but focused almost exclusively on the subdivision (c) grounds and gave little, if any, analysis to the subdivision (b) grounds. The court cited *In re Christopher C.* (2010) 182 Cal.App.4th 73 as a case with similar facts, but it is not relevant to the subdivision (b) analysis on appeal. In that case, a juvenile court sustained a petition under subdivision (b) and (c) grounds after DCFS received 30 referrals involving serious physical, emotional, and sexual abuse of children during their parents' 10-year custody dispute. (*Id.* at pp. 78, 81–82.) The appellate court, however, affirmed on the subdivision (c) grounds only, and did not address the subdivision (b) grounds. In this regard, *In re Christopher C.* is irrelevant to our subdivision (b) analysis.

In absence of evidence that Father's poor behavior placed Children at substantial risk of *physical* harm, we will not affirm the petition on the subdivision (b) ground.

**B.      Substantial evidence does not support the subdivision (c) emotional danger allegations**

Under subdivision (c), the court has jurisdiction over a child if the "child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by *severe* anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian." (§ 300, subd. (c), italics added.) Of note, DCFS asked the juvenile court to dismiss this allegation and takes no position on appeal as to the court sustaining the petition under subdivision (c).

Here, there is no evidence Children exhibited "severe anxiety, depression, withdrawal, or untoward aggressive behavior." (§ 300, subd. (c).) First, as to Daughter, the record is devoid of evidence that she had any such symptoms. She did not report the symptoms, nor did any adults indicate they observed or had clinically evaluated her to be at risk of suffering such symptoms. Daughter did not report she thought Parents were abusing her. While Daughter may experience the unpleasantness of Parents' separation,

the record does not indicate her emotional well-being was affected to the necessary statutory degree to sustain a petition. (*In re David M.*, *supra*, 134 Cal.App.4th at p. 828 ["inferences that are the result of mere speculation or conjecture cannot support a finding"; italics omitted].)

Second, as to Son, sufficient evidence does not support the finding the emotional problems he may have exhibited were the "result" of Father's conduct or were severe. First, DCFS alleges Father jeopardized Son's emotional well-being by making 10 unjustified reports about Children's welfare. We disagree. Of the 10 reports, four cannot be attributed to Father; three of those four reports were about *Father's* alleged abuse or neglect, and one was made by someone who had overheard a snippet of a conversation between Father and Son. Of the other six reports, DCFS substantiated one and found another inconclusive against Mother. We will not consider either of those reports as indications that Father baselessly and unnecessarily made reports.

Of the remaining four reports, two appear justified, even though DCFS did not substantiate the allegations. In the first report, Father claimed he noticed red marks on Son's ankles and Daughter allegedly told Father Mother's boyfriend had been tying up Son with a belt. When contacting DCFS, Father admitted he was unsure of Daughter's report's accuracy and asked for " 'someone who knows how to interview kids' " to speak with Daughter to verify whether her story was correct. We will not construe Father's acknowledgement of his uncertainty and request for help as evidence he baselessly initiated an investigation. In the second report, Son allegedly told Father Mother's boyfriend hit him on his ear with a basketball and he was in pain. Doctors later diagnosed Son with an ear infection. Although DCFS did not substantiate the allegation of abuse, Son's diagnosed ear infection validated Father's concern.

It is unclear whether the final two reports arose from Father's legitimate concern. For one allegation, a reporter from an agency where Father was enrolled in parenting classes stated Father told the reporter Daughter was having trouble urinating and sleeping, and during her sleep she said, " 'Stop!' " and " 'Don't touch my butt.' " Father was concerned Daughter may have been sexually abused by a man while in Mother's

7

care. DCFS determined the report was unfounded. For the other allegation, law enforcement said Father contacted them because Father thought Son had two black eyes and Son told Father Mother's boyfriend had hit him; Son reported the same to law enforcement. The officer concluded Son looked tired, but did not have two black eyes, and he did not believe that Son's description of Mother's boyfriend's behavior constituted abuse. We will not say two reports, which could be legitimate, constitute a pattern of unjustified and emotionally damaging reports by Father which caused Son harm.

In addition to the reports, DCFS has also expressed concern about Father's behavior. For example, for months Father would not allow DCFS to conduct an inspection of his residence, a trailer located in the back lot of his father's home; Father also told DCFS it would not be able to inspect his father's standing home, even though DCFS said it must, because the occupants (Father's father and Father's brother's family) would not agree and, in any event, Father claimed Children primarily stayed in his trailer when they visited. Father also displayed questionable behavior during DCFS monitored visits. For example, he had "outburst[s]" about the staff, was overheard speaking negatively and using profanities about Mother and DCFS to Children, and once used a pocketknife (a prohibited item) to sharpen Daughter's pencil. Father has also been described as agitated, aggressive, animated, hyperactive, and loud, but also as forgetful, confused, and guarded. DCFS, however, must show more than the fact of Father's poor or odd behavior for the court to sustain a subdivision (c) allegation; it must show how Father's behavior had a significant detrimental emotional impact on Children. DCFS failed to do so. The record contains little, if any, analysis regarding how exactly Father's odd behavior is emotionally impacting Children, and DCFS provided no elucidating argument on appeal.

DCFS has also reported some odd behavior by Son. For example, DCFS stated in a last minute information for the court that Son "has falsified [and] made weird and bizarre statements regarding his parents." Son told his teacher, for instance, that Father had his legs amputated, although Father had not. In addition, Son "has purposefully told

8

his father that he has multiple babysitters and that his mother frequently leaves him and [Daughter] with others to care for them. The child knows that this upsets his father and causes the father to become agitated." Son also told DCFS he believes he has been emotionally abused by Parents because they " 'fight' all the time" and do not speak with each other. While Son's behaviors may be odd and somewhat concerning, they do not indicate Son is evidencing *severe* symptoms indicative of him being at risk of suffering emotional abuse due to Father involving him in Parents' custody battle.

The court sustained the petition under subdivision (c), in part, by relying on *In re Christopher C.*, *supra*, 182 Cal.App.4th 73. The court held that under *In re Christopher C.*, children who have been the "casualties of the family's longstanding attacks on one another" and have parents who do not appear to be able or willing to cease the attack fall under the jurisdiction of the juvenile courts. (*Id*. at p. 85.) The court distinguished *In re Brison C.* (2000) 81 Cal.App.4th 1373, 1375–1376, where jurisdiction was improper because the parents acknowledged the destructive effect of their custody battle and took steps to defuse the familial tension. Here, the court found that, unlike the *In re Brison C.* parents and more like the *In re Christopher C.* parents, Father had not indicated he would cease involving Children in Parents' custody battle.

We disagree. To start, *In re Christopher C.* is distinguishable. The family in that case had been the subject of 30 referrals, three times as many as the 10 at issue here. (*In re Christopher C.*, *supra*, 182 Cal.App.4th at 75.) Of those 30 referrals, only one led to a filed dependency petition, a comparatively far smaller ratio than the ratio here. (*Ibid.*) The *In re Christopher C.* children also tangibly manifested severe emotional and psychological distress as the result of constant investigative questioning and exams and Parents' manipulative coaching. (*Id.* at p. 84.) For example, the parents' coaching caused the children to repeatedly falsely accuse each other of serious sexual abuse to the point where the children were unable to "distinguish reality from fiction." (*Id.* at pp. 84–85.) Here, as explained above, there is no similar caliber of evidence. The *In re Christopher C.* children had also been evaluated by numerous professionals, all of whom were in agreement the children were suffering significant psychological damage. (*Id.* at

9

p. 81.)  Here, there is no substantive professional psychological analysis regarding Daughter's well-being and little to none as to the extent and cause of Son's issues.  As to Father's willingness to remedy the familial tension as the parents did in *In re Brison C.*, family law courts are permitted to issue orders for families to attend counseling.  Nothing in the record indicates this type of counseling would be insufficient to address the family's continuing needs.

" '[T]he juvenile courts must not become a battleground by which family law war is waged by other means.' " (*In re Christopher C.*, *supra*, 182 Cal.App.4th at p. 85.) Although Parents' custody dispute may have the potential to negatively emotionally impact Children, the evidence does not show the impact warrants dependency jurisdiction.

## DISPOSITION

The dispositional order is reversed.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.


10